## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Case No. 1:11-10318-DJC

_____
                            )
MELISSA A. JUAREZ,       )
                            )
          Plaintiff   )
                            )
                            )
                            )
U.S. NATIONAL BANK, N.A.,  )
AS TRUSTEE, ON BEHALF OF THE )
ASSET BACKED SECURITIES    )
CORPORATION HOME EQUITY LOAN )
TRUST, SERIES NC 2005 HE8,  )
ASSET BACKED PASS-THROUGH   )
CERTIFICATES, SERIES NC 2005- )
HE8, AND                     )
SELECT PORTFOLIO SERVICING   )
                            )
          Defendant.  )
_____)

## PLAINTIFF'S MEMORANDUM OF OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

Now comes the Plaintiff, Melissa A. Juarez, ("Plaintiff"), who respectfully submits this Memorandum of Law In support of her Opposition to the Defendant's Motion to Dismiss.

## INTRODUCTION

As a preliminary matter, with regards to the legally deficient foreclosure auction of the Plaintiff's premises, held by U.S. Bank, NA., as Trustee on Behalf of the Holders of the Asset Backed Securities Corporation Home Equity Loan Trust, Series NC 2005 HE8, Asset Backed Pass-Through Certificates, Series NC 2005-HE-8 ("Defendant") correctly states, as it must

1

for the purposes of this Rule 12 Motion, that as a preliminary matter, that the court assume Plaintiff's well pleaded factual allegations set forth in her complaint as true. Defendant's arguments against Plaintiff's well pleaded factual statements based upon their "rising above the speculative level" and that her arguments failed to "possess enough heft to show that the Plaintiff is entitled to relief" can be grouped into the following categories,

1. **Plaintiff's complaint generally fails to state a claim to set aside the foreclosure, because:**

    a. The Plaintiff is "forever barred" from litigating the foreclosure

    b. The Plaintiff's First Mortgage and Note were "assigned" to U.S. Bank prior to the foreclosure sale

Defendants also assert that the Plaintiff has failed to join indispensable parties, has not Pled her fraud claims with particularity, and that the Plaintiff's G.L. c. 93A claims should be dismissed because there is a lack of "causal connection". Plaintiff, will make it abundantly clear, that she has overcome any limitations placed upon the sufficiency of pleadings under *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

## ARGUMENT

I. **THERE WAS NEVER A VALID ASSIGNMENT OF THE PLAINTIFF'S PROMISSORY NOTE OR ITS SECURITY INSTRUMENT, TO THE TRUST.**

A. **Mortgage Foreclosure In Massachusetts Under G.L. c. 244 § 14**

Prior the discussion of the requirements of the Massachusetts foreclosure statute, it is instructive to review the fact that what is colloquially known as a "mortgage" actually

consists of two completely separate components, (1) the borrower's promise to repay a debt, evidenced by a promissory note, and (2) a separate contract bargained for between the borrower and the lender whereby the borrower agrees that upon the default of the underlying debt, the "lender" can exercise its right under the power of sale clause contained within the security agreement (mortgage) to seize and auction the borrower's home **in order to satisfy the underlying debt**.

Each component is governed by different law; the borrower's promissory Note is governed by Article 3 of the Uniform Commercial Code, and codified in Massachusetts under G.L. c. 106. The borrower's security contract (mortgage) is governed by Massachusetts conveyancing laws (as Massachusetts is a "title theory jurisdiction) as well as traditional contract rules, such as mutuality of assent, bargained for consideration, offer and acceptance. However both of the above, must be analysed

Therefore the common misnomer is that "the mortgage follows the Note". If the security instrument is not properly perfected the holder of the note holds an unsecured obligation, while the holder of only the mortgage suffers a much harsher fate, this entity is the holder of a worthless piece of paper, as it is "security for nothing".

## 1. The Plaintiff's Mortgage Contract as A Transfer of An Interest In Land

Massachusetts is what is known as a "non-judicial" foreclosure jurisdiction. Non Judicial foreclosure operates

solely as a matter of contract law (contained within the borrower's security agreement), in that the borrower and the "lender" enter into a separate legal agreement that upon the borrower's <u>default on the underlying debt obligation</u>, the "lender" is allowed to exercise the power of sale clause bargained for between the parties, to seize and auction the home to satisfy the underlying debt. Because of this phenomenon, it is imperative for the foreclosing entity to strictly follow the requirements of G.L. c. 244 § 14. "It is familiar law that one who sells under a power of sale must follow strictly its terms. If he fails to do so there is no valid execution of the power, and the sale is wholly void." *Bottomly v. Krabachnick* 13 Mass. App. Ct. 480, 484 (1982).

The *Bottomly* court ruled that the failure to name the "holder" of the mortgage (with the right to enforce the power of sale) at the time of publication of the notice of sale of the borrowers home, did not comply with the strict requirements of G.L. c. 244 §14, and therefore the auction sale was found to be wholly void, and ___***as if it had never happened at all.***___

The Massachusetts Supreme Judicial Court has recently spoken to what the foreclosing entity must establish in order to satisfy the requirements of G.L. c. 244 § 14, in *U.S. Bank v. Ibanez* 458 Mass. 637 (2011) [1]. Defendants' counsel quotes sections of the *Ibanez* opinion that are not relevant to the action currently before this court [2].

---

[1] Plaintiff's counsel represented the LaRace family in this action.
[2] Please  See Exhibit A for the *U.S. Bank v, Ibanez* opinion.

2. **Defendants Proffer of The Puported Assignment of Plaintiff's Mortgage "Executed" on** <u>June 13, 2007</u>, **With a "Confirmatory Assignment" Later Recorded on** <u>October 29, 2008</u>

Defendant's statements in its Pleadings, coupled with the evidence proffered should be taken by this court as its admissions. Defendants Memorandum at page 8, clearly states, "the assignment of the First mortgage to U.S. Bank as Trustee (Defendant), was executed on <u>June 13, 2007</u>, with a confirmatory assignment later recorded on <u>October 28, 2008</u>". However, reviewing the Assignment of Mortgage recorded at the Suffolk County Registry of Deeds at Book 44186 Page 116, it does state a "Date of Assignment": June 13, 2007, which has been typed in, however the only execution signatures are all dated <u>October 16, 2008</u>, therefore there was no "execution" of this Assignment on <u>June 13, 2007</u>, nor could there ever be, as will be discussed below.

This precise issue, indeed from the same precise Law Firm (Ablitt Law Offices) that brought the foreclosure proceedings against Plaintiff, presented itself in the *LaRace* mortgage which was part of the *Ibanez* decision. In *LaRace*, the foreclosing entity sought to rely upon a "backdated" assignment that had an "effective date", which purportedly took place prior to the auction date. The court stated,

> "A confirmatory assignment, however, cannot confirm an assignment that was not validly made earlier or backdate an assignment being made for the first time. See *Scaplen v. Blanchard,* 187 Mass. 73, 76, 72 N.E. 346 (1904) (confirmatory deed " creates no title" but "takes the place of the original deed,

> and is evidence of the making of the former
> conveyance as of the time when it was made").
> Where there is no prior valid assignment, a
> subsequent assignment by the mortgage holder
> to the note holder is not a confirmatory
> assignment because there is no earlier
> written assignment to confirm." *Ibanez* 458
> Mass. 637, 654.

The issues involved with the "backdating" of the *LaRace* mortgage was the fact that the "effective date" of the purported assignment took place prior to the auction sale, however further evidence proffered by the Appellant Wells Fargo in that case revealed that, in fact, it is the common practice for entities involved in the securitization of mortgage loans, (such as Defendant Trust here), to "assign mortgages in blank". The Appellate record Appendix of the LaRace action provides positive proof that the "backdated" assignment that was being attempted to be relied upon by the Appellant's in *LaRace*, was indeed made out to "blank"[3]. As an assignment of mortgage is an assignment of an interest in land in this Commonwealth, the Massachusetts Supreme Judicial Court ruled that the prior "confirmatory assignment" executed prior to the *LaRace* auction sale date, in fact confirmed nothing, as a blank mortgage assignment is a nullity. Plaintiff states that the purported earlier assignment that was "purportedly confirmed" here before this court is fatally defective, as the earlier purported assignment, was also made in "blank".

3. **Defendants Proffer of The Purported Assignment of Plaintiff's Mortgage "Executed" on <u>June 13, 2007</u>, With a "Confirmatory Assignment" Later Recorded on**

---

[3] Please see Exhibit B

**October 29, 2008 is Legally Impossible, Due to The
Fact That New Century Mortgage Corporation Had Filed
For Protection Under Chapter 11 of The United States
Bankruptcy Code as of April 2007.**

Even more ominously for the Defendants, Plaintiff directly
queries all Defendants, named and unnamed, as well as their
current and former counsel, as to exactly how, and under what
purported authority, any assignment of Plaintiff's mortgage could
be made by New Century Mortgage Corporation on October 16, 2008,
or even June 13, 2007, where uncontroverted evidence will prove
that New Century Mortgage Corporation had in fact filed for
protection under Chapter 11 of the United States Bankruptcy Code,
in April of 2007. Indeed this precise issue was discussed in the
Massachusetts Land Court opinion of *New Century Mortgage v.
Braxton* 18 LCR 36 (2010)[4].

The *Braxton* case involved an action to reform two mortgages
given to New Century by Shauann N. Braxton and Kenya D.
Nickerson-Braxton. The court found that:

> "In April of 2007, New Century TRS Holdings,
> Inc., of which the plaintiff (New Century
> Mortgage Corporation) is an affiliate or
> subsidiary, filed chapter 11 bankruptcy
> proceedings. Pursuant to those proceedings,
> by order of the Bankruptcy Court, on August
> 1, 2008, a liquidating trust was created with
> Alan M. Jacobs as trustee, and all of New
> Century's Assets were distributed to the
> liquidating trust." *Braxton* at 38.

The court went on to discuss the challenge to New Century's
standing by the Defendant:

> "On March 31, 2009 New Century executed
> and recorded a document purporting to assign

---

[4] Please see Exhibit C

the First Mortgage to Consumer Solutions REO, with an 'effective date' of June 2, 2007" *Braxton* at 39.

Further:

"All of the recorded assignments out from New Century took place during the pendency of the bankruptcy proceedings in Delaware (which commenced in April of 2007). The terms of the August 13, 2009 Order of this court required the plaintiff (New Century) to show how New Century could assign the subject mortgages, or maintain this action, in light of the bankruptcy proceedings...." *Braxton* at 39.

New Century never proffered any of the court requested indicia to provide an evidentiary foundation to support under what legal authority it could make an assignment of any mortgage loan while it was in bankruptcy, precisely the issue before this court, and this case was dismissed as against New Century's claims.

At a minimum, Plaintiff has raised a meritorious claim, backed by an evidentiary foundation that establishes that her complaint does more than state legal conclusions of the "defendant did me wrong", and in fact represents a very strong argument that Plaintiff should succeed in the merits of her case, as well as providing an opportunity to amend her complaint(with leave of the court) to add claims related to the willfully deceptive acts of creating the appearance of ownership of her loan, and its attendant attempt to defraud this court.

## 4. <u>Uniform Commercial Code and G.L. c. 106</u>

A holder of a promissory Note means the person in *"physical possession"* of a negotiable instrument that is either payable to bearer or an identified person that is in possession. Mass.

G.L. c. 106 § 1-201(20). To qualify as a negotiable instrument, a promissory Note must contain an unconditional promise to pay a fixed amount of money, with or without interest or other charges described in the promise, if it is (l) payable to bearer or order at the time it is first issued or first comes into possession of a holder; (2) is payable on demand or at a definite time, and (3) does not state any other undertaking or instruction by the person promising payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral; (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor. Mass. G.L. c. 106 § 3- 104(a)."*Holder status would not confer on Defendant simply because the Plaintiff's Note is a negotiable instrument.*"

### 5. Defendants Have Not Proffered Any Evidence That They Were In Possession of The Plaintiff's Promissory Note at The Time of The First Publication of Auction

Reviewing the submission of pleadings submitted to this Court by Defendants, it does not indicate any proffer that they have produced any indicia that they were in physical possession of the Plaintiff's mortgage, or were in possession of her note at the time of the publication of the auction sale of Plaintiff's residence.  Under the Uniform Commercial Code, as codified in Massachusetts under G.L. c. 106, a negotiable instrument can be payable to a specific person or entity in possession ("order paper"), or payable to "bearer" in made out in blank. In the

matter before this court there has been **_no proffer whatsoever_** of the Plaintiff's promissory note

When confronted with an issue where a transfer of a Note that is "order paper", Massachusetts courts have opined, "Article provides that where a negotiable instrument is payable to an identified person, the transfer of the ownership of the instrument requires endorsement by the holder. and transfer of **possession** of the instrument". In Re: Gavin, 319 B.R. 27, 31 (quoting G.L. c. 106 § 3-201). "Article 3 also provides that an instrument is "transferred" when it is delivered by the Holder for the purpose of giving the recipient the right to enforce the instrument." Gavin at 31 (quoting G.L. c. 106 § 3-203 ("Proper transfer of the instrument vests in the recipient any rights of the transferor to enforce the instrument"). Gavin at 31 (quoting G.L. c. 106 § 3-203, "and the transferor cannot transfer greater enforcement rights than it holds" (See Id.). The Gavin court went on to explain that there may be relief or savings clause under Article 3 for a creditor not currently in possession of properly endorsed Note. (Quoting G.L. c. 106 § 3-309). "_Specifically, Article_ 3 _provides that a person who is not in possession of the instrument may nonetheless enforce it,_ if the instrument has been lost, destroyed, or stolen, and: (i) _the person was in possession_ of _the instrument and entitled_ to _enforce it when loss_ of _possession occurred._ (ii) The loss of possession was not the result of a transfer by the person or a lawful seizure of the instrument, and ;(iii) the person cannot reasonably obtain possession of the instrument because the instrument was

destroyed, its whereabouts cannot be determined, or it is in wrongful possession of an unknown person *"A person seeking to enforce rights under a lost instrument must prove the terms of the instrument and the person's right to enforce it (quoting* G.L. c. 106 § 3-309(b», *and a court may not enter judgment in favor of the person seeking enforcement unless it finds that the person obligated to pay the instrument is adequately protected against loss that might occur due to a claim by another party seeking to enforce the instrument".* (Id.). The Gavin court found that the Assignee seeking to enforce the terms of the Note, (Premier) had produced the original Note made payable to the originator (Fleet Bank), and also had produced the subsequent assignment of the Note by Sovereign to Premier. *However, Premier failed to provide the Assignment between Fleet Bank and Sovereign.* "Moreover, *Premier failed to produce either evidence of the endorsements required to establish its ownership of the Note or substitute evidence permitted under state law. To the contrary, Premier admitted at trial and oral argument that it had no direct evidence of the Assignment of the Note from Fleet to Sovereign. Absent such evidence, Premier has failed to establish title to the Note, and thus has no enforceable obligation against the debtor.*" Gavin at page 32.

Like <u>Gavin</u>, Defendant has failed to produce evidence of the indorsements required to establish the chain of ownership of the Plaintiff's note, nor has it produced any indicia that it was in possession of the Plaintiff's physical note at the time of the publication of the auction sale of Plaintiff's home. Indeed,

Defendants have failed to proffer any evidence whatsoever that provides an evidentiary foundation that they were in possession of the Plaintiff's note at any time, let alone at the time of foreclosure, as a real party in interest

As discussed, Defendants seek to rely **_solely_** upon a fatally defective purported assignment of the Plaintiff's mortgage to the Trust, from an entity who has ceased operations (New Century) and was in fact bankrupt at the time of the purported "assignment".

### 6. Plaintiff Preemptively Challenge the Signatures on any Note Produced by Defendants

If Defendants produce the 'original' Plaintiff promissory Note, Plaintiff wishes to reserve the right to a forensic examination of the signatures on the purported Note produced. G.L. c. 106 § 3-308 (a) states that "In an action with respect to an instrument, the authenticity of, and the authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. Further, G.L. c. 106 § 3-308(a) states that "If the validity of the signature on an instrument is denied in the pleadings, the burden of establishing validity is on the person claiming validity". Plaintiff's examination would not merely be limited to whether all signatures were in fact authorized and/or forgeries, but additionally said examination would encompass whether in fact the purported "original" note was in fact merely a high quality physical reproduction of an Electronic Note.

### 7. Defendants Erroneously State That Plaintiff Claims Standing Under the Defendants PSA

Defendant implies that because Plaintiff has described the requirements necessary under the Trust's Governing Instrument, the Pooling and Servicing Agreement,(as well as its attendant Prospectus Supplement), she is making claims as a third party beneficiary. Defendants conveniently present this spin to confuse the court. and in fact, this was also attempted by the Appellant's in *Ibanez*. Indeed, the Pooling and Servicing Agreement is a contract ***among the parties*** to the PSA that place certain requirements related to their respective representations and warranties ***to each other***.

However, the Plaintiff makes no such claim as one of the parties to the PSA; rather her claims are based upon the Trust's failure to convey her note and mortgage, as part of its corpus, to the trust under the requirements of its Governing Instruments. Defendants conveinetly do not reiterate to this court, the fact that it must always be remembered that this action involves an ownership of corpus related to a business Trust. Therefore any conveyance of the corpus to the Trust must comply with its Governing Instrument requirements. The Trust's Governing Instrument clearly only authorizes one party, Asset Backed Securities Corporation (the Depositor), to convey the Plaintiff's note and mortgage to the trust by a date certain (the Closing Date). The Ibanez court undertook an analysis of the requirements of the PSA, and made no finding that the Appellees's in that action (Ibanez and LaRace) were precluded as third party

beneficiaries from citing to the requirements of these documents, and in fact the court stated. Indeed, the court clearly articulated the requirements necessary under the Governing Instruments of the trust, in order for the loans in question to be validly conveyed.

> "Wells Fargo claims that, before it issued the foreclosure notice, it was assigned the LaRace mortgage under the PSA. The PSA, in contrast with U.S. Bank's PPM, uses the language of present assignment ("does hereby….assign" and "does hereby deliver"

Further, the court stated:

> Wells Fargo provided the Judge with no document that reflected that ABFC (Asset Backed Funding Corporation), the Depositor held the LaRace mortgage that it was purportedly assigning in the PSA." *Ibanez* at 650.

Therefore, Defendants argument in this regard is of no moment, and in fact should be disregarded.

## 8. G.L. c. 244 § 14 Requires Strict Compliance

The Commonwealth does not require a mortgage holder to obtain judicial authorization  to foreclose on a mortgaged property, See G.L. c. 183 § 21, G.L. c. 244 § 14. With the exception being, the limited judicial proceeding conducted in order to certify that the mortgagor is not entitled to protection under the Servicemembers Civil Relief Act. In Massachusetts, a mortgagee can foreclose on a property through exercise of the power of sale clause in the mortgagor's mortgage contract, if such power is granted by the mortgage itself.

> Where a mortgage grants the mortgage holder the power of sale, as did both the Ibanez and

> LaRace mortgages, it includes by reference
> the power of power of sale set out in G.L. c.
> 183 § 21, and further regulated by G.L. c.
> 244 §§ 11-17C. Under G.L. c. 183 § 21, after
> a mortgagor defaults in the performance of
> the underlying note, the mortgage holder may
> sell the property at a public auction and
> convey the property to the purchaser in fee
> simple. *Ibanez* at 647-648

Because of the substantial power of the mortgagee to conduct a sale of the mortgagor's residence outside judicial review, the requirements of Massachusetts statutory law with regards to mortgage foreclosure must be followed strictly.

> "Recognizing the substantial power that the
> statutory scheme affords to the mortgage
> holder to foreclose without immediate
> judicial oversight, we adhere to the familiar
> rule that 'one who sells under a power [of
> sale] must follow strictly its terms. If he
> fails to do so there is no valid execution of
> the power, and the sale is wholly void."
> *Ibanez* at 647-648 (quoting *Moore v. Dick*, 187
> Mass. 207, 211 (1905).

In order to foreclose, Defendants must have been the holder of the Plaintiff's mortgage, at the time of the first publication of the auction sale of Plaintiff's residence. In order to be the holder of the Plaintiff's mortgage, with the right to enforce its terms, Defendants also must have been in physical possession of the Plaintiff's underlying promissory note at the time of the first publication of the auction, as well.

Plaintiff has proffered significantly reliable evidence that Defendants have not provided any evidentiary foundation that they were in fact in possession of the Plaintiff's note or mortgage at the time of the first publication of the auction of the Plaintiff's residence. In fact, Plaintiff's proffer now establishes that the purported assignment of mortgage relied upon

by Defendants is fatally defective, as it purportedly was assigned to Defendants from New Century, while in bankruptcy. Further, Defendants have never proffered any evidence of possession of the Plaintiff's physical note at the time of auction, and as previously discussed, New Century was in bankruptcy, and therefore New Century could not have assigned Plaintiff's note to Defendants.

## II. PLAINTIFF'S RESPONSE TO DEFENDANT'S POSITION THAT SHE IS "FOREVER BARRED" FROM LITIGATING THE FORECLOSURE

Defendant's counsel makes the sweeping statement at page 4 of its Memorandum, "As a matter of law the Plaintiff is forever barred from attacking the validity of the foreclosure sale and seeking to effectuate a return of her Property". Defendants erroneously cite *Ibanez* out of context, for the proposition that under G.L. c. 183 § 21, after the foreclosure sale, the former mortgagor is precluded from "defending the validity of the forecloure auction". Defendants fail to make the distinction that a mortgagor is so precluded only if ***there has been a valid auction sale***. Here, based upon Plaintiff's meritorious challenge to the validity of the puported auction sale, due to the Defendants failure to proffer any evidentiary foundation that could legally establish that the Trust had any legal authority to conduct the auction of Plaintiff's residence under G.L. c. 244 § 14, or that it was ever a valid holder of the Plaintiff's note under G.L. c. 106, the Defendants claim challenging the validity of the wrongful foreclosure auction is of no moment under any analysis under G.L. c. 183 § 21.

Additionally, unlike Defendants depiction of Plaintiff's rights, as the claims made by Plaintiff involve a tort action (wrongful foreclosure for failure to comply with G.L. c. 244 § 14), she was well within any statute of limitations for bringing such action, especially based upon a claim that the purported auction sale of her home was void ab initio.

### III.   PLAINTIFF HAS NOW CHALLENGED THE PUPORTED CERTIFICATE OF ENTRY UNDER G.L. C. 244 §§ 1,2 THEREFORE DEFENDANT HAS NOT MAINTAINED A PEACABLY ENTRY FOR THREE YEARS AS REQUIRED.

Clearly, Plaintiff has challenged the Defendants Certificate of Entry, and thus Defendant has not maintained the required three years of peaceable possession in order to claim rights under G.L. c. 244 § 1, or §2.

### IV.   PLAINTIFF'S RESPONSE TO DEFENDANT'S POSITION THAT SHE HAS FAILED TO JOIN PARTIES

Defendants cite Federal Rule of Civil Procedure, Rule 19, for the proposition that the Plaintiff has failed to include necessary parties to this action. Defendants' reliance here is tragically misplaced. First, as to New Century, this court could take this as an admission by Defendants that in fact, the Trust never legally received any conveyance of the Plaintiff's mortgage. However, more succinctly, and as discussed, New Century Mortgage Corporation is bankrupt, and has ceased operations, and therefore it would be impossible to join them as a Party.

Second, as to the new homeowners, Plaintiff's claims are not as against the new homeowners, rather Plaintiff's claims are based entirely upon the Defendants defective execution of the

power of sale in the Plaintiff's mortgage contract, and therefore seeks an order reversing the foreclosure auction, and further seeks to declare that Plaintiff is in fact the rightful owner of the property in fee simple. Should this court so rule, Plaintiff would then have a later action as against the new homeowners for ouster. Therefore, Defendants claims regarding Rule 19, should be summarily disregarded.

### V.   G.L. c. 93A and Fraud Claims

Defendants state that the Plaintiff "has failed to demonstrate any causal connection between the failure to comply with the statutory provisions in G.L. c. 244 § 2, 14, and Plaintiff's loss of equitable title to the Property." See p. 12 of Defendants Motion to Dismiss. Here Plaintiff's claims are also directed towards the conduct of SPS. SPS relies upon its assertion that the auction sale cannot be rescinded, because the Property was sold to a third party buyer. This statement is intentionally deceptive in two distinct ways. First, even ***if*** there was a valid third party sale, the Plaintiff has a meritorious claim against the Trust, and SPS for the wrongful foreclosure of her residence, and would have claims for monetary damages associates with such actions on the part of Defendants. Secondly, under G.L. c. 244 § 14, a wrongfully conducted foreclosure auction is a ***nullity***, and therefore the new homeowners purchased nothing from "U.S. Bank as Trustee". The new homeowners claims lie as against the foreclosing entity, and possibly their title insurance company, however this is of no

moment as against Plaintiff. This precise issue was heard in the Massachusetts Land Court, in *Bevilacqua v. Rodriguez*, 10 MISC 427157, 18 LCR 451 (2010). The issue in *Bevilacqua*, was whether an innocent third party purchaser would be protected where purchasing a property from a wrongfully conducted foreclosure auction. The court dismissed all claims, and ruled that the purported purchaser purchased nothing, and any claims the moving party had would lie as against the seller of the property, U.S. Bank as Trustee. <u>Thus, based upon all of the foregoing, Plaintiff has also pled her Fraud claims with particularity</u>.

## VI.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short  and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly,* 550 U. S. 544, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation. *Id*., at 555 (citing *Papasan* v.*Allain,* 478 U. S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U. S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570. A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id., at* 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*, at 557 (brackets omitted). "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F. 3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not "show[n]that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). Here, based upon the foregoing the Plaintiff's complaint contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face, which allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged.

    **WHEREFORE,** the Plaintiff, respectfully requests that the Defendants Motion to Dismiss be DENIED, as she has raised significanty plausible claims, which are inappropriate for dismissal at this stage of the litigation.

Respectfully Submitted,
Melissa A. Juarez
By Her Attorney


/s/Glenn F. Russell, Jr
Glenn F. Russell, Jr.
The Law Office of
Glenn F. Russell, Jr.
38 Rock Street, Suite 12
Fall River, MA 02720
(508) 324-4545
Dated:  April 27, 2011          BBO# 656914



**CERTIFICATE OF SERVICE**

I, Glenn F. Russell, Jr., do hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and copies will be additionally served by electronic and regular mail upon the following this is the 27th day of April, 2011:


/s/Glenn F. Russell, Jr
Glenn F. Russell, Jr.

Peter F. Carr, II
Eckert, Seamans, Cherin,
& Mellott, LLC
Two International Place, 16th Fl.
One Boston Place
Boston, MA 02110-2602