## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|   |   |   |
|---|---|---|
| **MELISSA A. JUAREZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 11-10318-DJC** |
| | ) | |
| **U.S. BANK NATIONAL ASSOCIATION, AS** | ) | |
| **TRUSTEE, ON BEHALF OF THE HOLDERS** | ) | |
| **OF THE ASSET BACKED SECURITIES** | ) | |
| **CORPORATION HOME EQUITY LOAN** | ) | |
| **TRUST, SERIES NC 2005-HE8, ASSET** | ) | |
| **BACKED PASS-THROUGH CERTIFICATES,** | ) | |
| **SERIES NC 2005-HE8, AND SELECT** | ) | |
| **PORTFOLIO SERVICING, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                    November 4, 2011

## I.      Introduction

Plaintiff Melissa Juarez ("Juarez") brings this action against U.S. Bank National Association ("U.S. Bank") and Select Portfolio Servicing, Inc. ("SPS") (collectively, "Defendants") alleging fraud and violations of Massachusetts statutory law in connection with the foreclosure of her residence. The Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted and Rule 12(b)(7) for failure to join necessary parties. For the reasons set forth below, the Defendants' motion to dismiss is GRANTED.

1

II.    **Factual Background**

The following facts are drawn from Juarez's amended complaint.    On August 5, 2005, Juarez purchased a single family residence located at 68 1/2 Chickatawbut Street, Dorchester, Massachusetts (the "Property") for $351,000.00. (Am. Compl. ¶¶ 6, 7, Ex. B (mortgage and note)).[1] To finance this purchase, she executed a promissory note ("Note") which was secured by a mortgage ("Mortgage") on the Property in the amount of $280,800.00.  (Id. ¶¶ 9, 11, Ex. B).  She also executed a second promissory note secured by a second mortgage on the property in the amount of $70, 200.00.  (Id. ¶ 12).  The Note and Mortgage identify New Century Corporation ("New Century") as the lender and holder of the promissory note.  (Id. ¶ 9, Ex. B).

"Immediately after" the closing, New Century assigned the Note and Mortgage to NC Capital Corporation ("NC Capital").  (Id. ¶¶ 14, 15, 40, 71).   NC Capital subsequently sold the Mortgage to Asset Backed Securities Corporation which created the Asset Backed Securities Corporation Home Equity Loan Trust, Series NC 2005-HE8 ("Trust") holding pools of loans.  (Id. ¶¶ 16,19).  No assignments to evidence any of these transactions were recorded in the Registry of Deeds on August 5, 2005 or before the foreclosure of the Property.  (Id. ¶¶ 15-17, 42).  The Trust is governed by a Pooling and Servicing Agreement ("PSA") under which U.S. Bank, as Trustee, holds and manages the Trust assets.  (Id. ¶¶ 21-23, 29).  SPS acts as servicer for U.S. Bank.  (Id. ¶ 29).  The PSA required that all assignments to the Trust be publicly recorded in the appropriate

---

[1]For the purposes of this Memorandum and Order, the parties' filings shall be abbreviated as follows:   Juarez's amended complaint ("Am. Compl."); Defendants' memorandum of law in support of their motion to dismiss ("Def. Memo"); Juarez's opposition to Defendants' motion to dismiss ("Pl. Opp."); Defendants' Reply ("Def. Reply"); Defendants' Sur-reply ("Def. Sur-reply"); Juarez's Sur-reply ("Pl. Sur-reply"); and docket ("D.").

County Registry office, which in Juarez's case was the Suffolk County Registry of Deeds.  (<u>Id.</u> ¶ 38).

Soon after purchasing the Property in 2005, Juarez fell behind on her payments and defaulted under the terms of the Note and Mortgage.  (<u>Id.</u> ¶¶ 44-45).  Defendants commenced foreclosure proceedings in August 2007.  (<u>Id.</u> ¶ 45).

About a year later, on July 22, 2008, the Property was sold at a foreclosure sale and purchased by U.S. Bank for $325,869.45.  (<u>Id.</u> ¶¶ 59, 63).   An affidavit was recorded evidencing the foreclosure sale and stating that SPS, as attorney-in-fact for U.S. Bank, sold the Property although no power of attorney was recorded with the affidavit.  (<u>Id.</u> ¶¶ 59, 61).  The affidavit also stated that notices regarding the sale of the Property were mailed to Juarez, but Juarez alleges that she did not receive such notices.  (<u>Id.</u> ¶ 60).

Three months after the foreclosure sale, on October 29, 2008, SPS (acting under power of attorney granted by New Century), recorded the assignment of the Mortgage to U.S. Bank.  (<u>Id.</u> ¶¶ 47-48).  No power of attorney was recorded with this assignment evidencing U.S. Bank's grant of authority to either SPS or Bill Koch, the signatory, in his capacity as an employee of SPS, to act on behalf of U.S. Bank.  (<u>Id.</u> ¶¶ 49-50).  The assignment was executed and notarized on October 16, 2008 and indicated a "Date of Assignment" of June 13, 2007.  (<u>Id.</u> ¶ 51).   On October 31, 2008, Defendants sold the Property to its current owners.  (<u>Id.</u> ¶ 65).

## III.    Procedural History

Nearly two years after the foreclosure of the Property, on October 29, 2010, Juarez filed a complaint in Suffolk Superior Court against Defendants alleging fraud and violations of Massachusetts foreclosure statutes.    (D. 9).  On January 24, 2011, Juarez filed an amended

complaint, alleging fraud (Count I), violations of foreclosure statutes, Mass. Gen. L. c. 244, § 14 (Count II) and Mass. Gen. L. c. 244, § 2 (Count III), as well as violations of Mass. Gen. L. c. 93A (Count IV). (D. 9). Juarez also sought to invalidate the foreclosure sale, restore her status as the rightful legal owner of the Property, determine that the Defendants were not the legal owners of the Mortgage and Note at the time of foreclosure, and that the Court allow Juarez to move back into the Property or allow her to sell it. Juarez seeks damages including mortgage payments, closing costs, down payments, moving fees, court costs, double and treble damages plus attorney's fees as prescribed under c. 93A.

After Defendants removed this case to this Court, Juarez moved to remand the case to state court on March 11, 2011. (D. 1, 4-5). The Court has denied that motion. (5/6/2011 D. entry). Defendants subsequently moved to dismiss the amended complaint, (D. 10-11), and the Court has now heard oral argument on that motion.

## IV.    Discussion

### A.    Standard of Review

Post-Twombly and Iqbal, whether a complaint should survive a motion to dismiss for failure to state a claim depends upon whether the pleading satisfies the "plausibility" standard. Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). As the First Circuit has made clear, to determine whether the factual allegations in the complaint are sufficient to survive a motion to dismiss, the Court "employ[s] a two-pronged approach." Soto-Torres v. Fraticelli, 654 F.3d 153, 158 (2011). "The first prong is to identify the factual allegation and to identify statements in the complaint that merely offer legal conclusions couched as facts or are threadbare or conclusory." Id. (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir.

4

2011)).  "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action."  Ocasio-Hernández, 640 F.3d at 12 (quoting Iqbal, 129 S.Ct. at 1950).  The second prong is to assess whether the factual allegations "'allow [ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Soto-Torres, 654 F.3d at 159 (quoting Iqbal, 129 S.Ct. at 1949).  If they do, "the claim has facial plausibility."  Ocasio-Hernandez, 640 F.3d at 12.  "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief."  Soto-Torres, 654 F.3d at 159 (quoting Sepúlveda-Villarini v. Dep't. of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010) (Souter, J.)).

### B.      Claims Under Mass. Gen. L. c. 244

#### 1.      Count II:  Violation of Mass. Gen. L. c. 244, § 14

Central to Juarez's complaint are her claims arising under statutory law and so the Court begins its analysis with a discussion of these counts.

Count II alleges that Defendants violated M.G.L. c. 244, § 14 by stating that they sent Juarez a notice of the foreclosure in the mail when they did not do so.  (Am. Compl. ¶¶ 92-94).  Under § 14, notice of a foreclosure sale must be sent via registered mail to the owner of the property and published in a town newspaper where the mortgaged property lies prior to the date of sale.[2]  "The . . . registered mail notice requirement is satisfied by mailing and nonreceipt is irrelevant."  Hull v. Attleboro Sav. Bank, 33 Mass. App. Ct. 18, 25 (1992).

---

[2]The amended complaint does not contain any factual allegations that the foreclosure sale was not published in a newspaper as required by § 14.

Here, Juarez attached to her amended complaint an affidavit executed by Defendants on October 22, 2008 (Am. Compl., Ex. E), stating that Defendants published a notice of the foreclosure and mailed the required notice to Juarez in accordance with § 14. (Am. Compl. ¶¶ 92). Since the affidavit was furnished by Juarez, is central to her claim and she does not dispute its authenticity, the Court may consider the assertions in the affidavit as if they were allegations in the amended complaint, without converting this motion into one for summary judgment. See Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993). Even accepting Juarez's allegation that she never received the notice, the affidavit states that the Defendants mailed the notice to Juarez and as such is sufficient to satisfy § 14. See Hull, 33 Mass. App. Ct. at 25. Thus, Juarez's allegations that Defendants failed to comply with the notice requirement does not state a plausible claim under Mass. Gen. L. c. 244, § 14.

The amended complaint also appears to challenge Defendants' legal authority under Mass. Gen. L. c. 244, § 14 to foreclose on the Property on three grounds: (1) assignments of the Mortgage were not recorded prior to the notice of sale or subsequent foreclosure sale; (2) assignment of the Mortgage to U.S. Bank violated the PSA; and (3) U.S. Bank did not hold the Note at the time of foreclosure. (Am. Compl. ¶¶ 32, 71-74, 80-82, 95-96).

As to the allegation that no assignments were recorded prior to the notice of sale or foreclosure, including the assignment of the Mortgage to U.S. Bank, in U.S. Bank National Association v. Ibanez, 458 Mass. 637, 651 (2011), the Supreme Judicial Court held that an assignment need not be recorded prior to execution of a notice of sale or foreclosure sale. Id. at 651. So long as there is an otherwise valid assignment of the mortgage to the foreclosing entity, that assignment gives the mortgage holder the statutory power to sell regardless of whether the

assignment has been recorded prior to the notice of sale or foreclosure sale. <u>Id.</u> at 654 (citing Mass. Gen. L. c. 183 § 21; <u>MacFarlane v. Thompson</u>, 241 Mass. 488, 489 (1922)). If the earlier assignment is not recorded before the notice of sale or foreclosure sale, "a written assignment executed after foreclosure confirming the earlier assignment may be properly recorded." <u>Id.</u>

Here, the corporate assignment attached to the amended complaint shows that SPS assigned the Mortgage to U.S. Bank on June 13, 2007 ("Date of Assignment") and that the assignment was recorded on October 29, 2008. (Am. Compl., Ex. C (corporate assignment)). The assignment recorded on October 29, 2008 (after the foreclosure sale) merely confirmed the earlier assignment made on June 13, 2007. Such confirmatory assignment is entirely consistent with the holding in <u>Ibanez</u>.[3] Accordingly, Juarez's allegations that U.S. Bank had no legal authority to foreclose on her residence on the grounds that the assignment was not recorded prior to the notice of sale or foreclosure sale are insufficient to state a plausible claim that Defendants violated M.G.L. c. 244, § 14 under Count II. <u>See, e.g.</u>, <u>Kiah v. Aurora Loan Services, LLC</u>, 2011 WL 841282, at *6 (D. Mass. Mar. 4, 2011) (dismissing plaintiff's claim that assignment of mortgage was invalid because although not recorded, assignment occurred before notice of sale).

Read in the light most favorable to Juarez, the amended complaint also appears to allege that U.S. Bank had no legal authority to foreclose on her residence because the assignment of the mortgage to U.S. Bank violated the terms of the PSA and was therefore invalid. (Am. Compl. ¶¶ 73-74, 80-82). To have standing, a plaintiff must show: (1) "injury in fact"; (2) "causal connection

---

[3]To the extent Juarez claims that the other assignments she alleges were made to and from NC Capital were not timely made (i.e. - prior to notice of sale or foreclosure sale in July 2008), such a claim is inconsistent with the allegations in the amended complaint that all of the assignments of the Mortgage occurred "immediately after" the August 5, 2005 closing. Am. Compl. ¶¶ 40, 71.

between the claimed injury and challenged conduct"; and (3) redressability. <u>Duke Power Co. v. Carolina Env't Study Grp.</u>, 438 U.S. 59, 72, 75 n. 20 (1978).   The plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." <u>Warth v. Seldin</u>, 422 U.S. 490, 499 (1975).

Although Defendants argue that Juarez, as mortgagor, has no standing to challenge the validity of the mortgage assignment based on the PSA because she is neither a party to nor third-party beneficiary of it,  (Def. Memo at 11), Juarez makes clear in her opposition that she does not assert claims arising from the PSA on such grounds.  (Pl. Opp. at 13).  Rather, Juarez argues that <u>Ibanez</u> gives her standing on an independent basis to declare the mortgage assignment invalid based upon non-compliance with the terms of the PSA.

The Court declines to extend <u>Ibanez</u> in the manner suggested by Juarez.  In <u>Ibanez</u>, two banks sought a declaratory judgment that they held clear title to two properties on which they had foreclosed.  458 Mass. at 638.  The banks argued that they had been assigned the respective mortgages prior to notice of sale and subsequent foreclosure sale under certain securitization documents (a trust agreement described in a private placement memorandum and a PSA) to which they were parties.  <u>Id.</u> at 649-51.  The land court found that such documents failed to demonstrate the validity of the purported assignments and concluded that the banks had failed to establish they held the respective mortgages at the time of the notice of sale and foreclosure sale and thus failed to convey valid title.  <u>Id.</u> at 649-50, 652.  Whereas the <u>Ibanez</u> plaintiffs sought to demonstrate they held the mortgages through an assignment under securitization documents to which they were actual parties, here, Juarez is in a starkly different position; she is not a third-party beneficiary or party to the PSA she seeks to enforce.   She therefore does not have a legally protected interest in the

assignment of the mortgage to bring an action arising under the PSA.   Ibanez does not provide

independent standing for a plaintiff to challenge an assignment under a PSA to which she is not a

party or of which she is not a third-party beneficiary.   Most courts in this district to have addressed

the issue agree, see, e.g., Peterson v. GMAC Mortg., LLC, 2011 WL 5075613, at *2-4 (D. Mass.

Oct. 25, 2011) (declining to read Ibanez to "provide an independent basis for mortgagors to

collaterally contest previously executed mortgage assignments to which they are not a party and that

do not grant them any interests or rights"); In re Correria, 452 B.R. 319, 324-25 (1st Cir. BAP June

30, 2011) (affirming lower court's ruling that mortgagors lacked standing to challenge the

mortgage's chain of title under the PSA because they were neither parties nor third party

beneficiaries to the contract), and at least one court in this district has expressed doubt concerning

plaintiff's standing to challenge a mortgage assignment between third parties, Kiah, 2011 WL

841282, at *6 (stating that it is "difficult to see why plaintiff has standing to assert [challenge to

mortgage assignment based on lack of consideration]").[4]   Accordingly, Juarez has failed to state a

plausible claim under Mass. Gen. L. c. 244, § 14 for Defendants' violation of the PSA.

Finally, the amended complaint  alleges that U.S. Bank never held the Note in addition to

the Mortgage at the time of the foreclosure sale and, as a result, had no legal authority to foreclose

on the Property.  (Am. Compl. ¶ 32).  The theory upon which this allegation is based is incorrect as

a matter of law.  In Massachusetts, the foreclosing entity must hold the mortgage only, not both the

mortgage and the note.  Peterson, 2011 WL 5075613, at *4 n. 3; McKenna v. Wells Fargo Bank,

---

[4]At least one case has suggested that Ibanez appears to give such standing.  See Rosa v.
Mortgage Electronic Systems, Inc., 2011 WL 4381191, at *3 n. 5 (D. Mass. Sept. 9, 2011)
(Collings, J.) (noting that "[p]laintiffs appear to have standing under [Ibanez], because the
allegations [regarding the validity of the assignment], if proven, would render the foreclosure
sale void, under Massachusetts law").

N.A., 2011 WL 1100160, at *2 (D. Mass. Mar. 21, 2011) (noting that the mortgage holder is the proper foreclosing entity; Mass. Gen. L. c. 244, § 14 makes no mention of note holders). The mortgage and note may be owned by different entities in which case, the mortgagee "holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage." Ibanez, 458 Mass. at 652; see In re Lopez, 446 B.R. 12, 18 (Bankr. D. Mass. 2011) (noting that "[e]ven though MERS never had possession of the Note, it was legally holding the Mortgage in trust for the Note holder") (citing Kiah, 2011 WL 841282, at *8).

In Massachusetts, a mortgage holder may foreclose on the property by exercise of the statutory power of sale if such power is granted to it under the mortgage. Ibanez, 458 Mass. at 646. If the mortgage does so, the power of sale may be assigned to an assignee and the assignee may exercise the power of sale as long as it was assigned the mortgage at the time of the notice of sale and foreclosure sale. Id. at 647-48. Where the assignee is the foreclosing entity, it must show that the "assignment was made by the party that itself held the mortgage." Id. at 651.

Here, the Mortgage attached to the amended complaint clearly delegates the power of sale to New Century and its successors and assigns. The Mortgage provides that Juarez "does hereby mortgage, grant, convey to Lender and Lender's successors and assigns, with power of sale, the . . . property . . . ." Am. Compl., Ex. B (Mortgage at 3). New Century, as mortgagee, assigned the Mortgage to U.S. Bank prior to the notice of sale and subsequent foreclosure sale as evidenced in the recorded corporate assignment. See Ibanez, 458 Mass. at 651. U.S. Bank, as mortgagee, therefore was not required to possess the Note to have the authority to foreclose on the Property.[5]

---

[5]Because Massachusetts law does not require possession of the Note for a valid assignment or foreclosure if the foreclosing entity holds the mortgage, Juarez's contention that Defendants have failed to offer evidence showing they did possess the Note (Pl. Opp. at 9) is

In her sur-reply, Juarez relies on a Superior Court case, <u>Eaton v. Federal Nat'l Mortg. Ass'n</u>, slip. op., No. 11-1382, at 4 (Mass. Super. Ct. June 17, 2011), to support her argument that under Massachusetts law, one must hold both the mortgage and the note before initiating foreclosure.  (Pl. Sur-reply at 5 n. 5).  This Court agrees with other courts in this district that <u>Eaton</u> does not appear to be an accurate reflection of the law in Massachusetts, particularly in light of <u>Ibanez</u> where the Supreme Judicial Court reaffirmed the principle that in Massachusetts, a promissory note and the mortgage securing the obligation under the note do not need to be held by the same entity.  <u>See, e.g.</u>, <u>In re Marron</u>, 2011 WL 3800040, at *1-2 (Bankr. D. Mass. Aug. 29, 2011) (declining to adopt the reasoning of <u>Eaton</u>).

### a.      New Allegations Raised in Opposition to Motion to Dismiss

Juarez's opposition raises new allegations to support her claim that U.S. Bank had no legal authority to foreclose on her residence.[6]  To the extent Juarez requests leave to amend her complaint to include such allegations, the court declines to grant such leave on futility grounds.   Although leave to amend pleadings "shall be freely given when justice so requires," Rule 15(a), denying leave is warranted if the proposed new claims are futile.  <u>Epstein v. C.R. Bard, Inc.</u>, 460 F.3d 183, 191 (1st Cir. 2006).  A proposed amendment is futile if the complaint, as amended, still fails to state a claim upon which relief may be granted.  <u>See</u> <u>Abraham v. Woods Hole Oceanographic Inst.</u>, 553 F.3d 114, 117 (1st Cir. 2009) (citations omitted).  If the proposed amendment "would be futile or would serve no legitimate purpose, the district court should not needlessly prolong matters."  <u>Correa-Martinez</u>

---

without merit.  <u>See, e.g.</u>, <u>Kiah</u>, 2011 WL 841282 at *8; <u>In re Marron</u>, 455 B.R. 1, 4-5 (Bankr. D. Mass. 2011); <u>Ibanez</u>, 458 Mass. at 651.

[6]Plaintiff, an attorney, filed her amended complaint *pro se* and filed her opposition after she retained an attorney.

v. Arrillaga-Belendez, 903 F.2d 49, 59 (1st Cir. 1990), overruled on other grounds by, Educadores

Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 66 (1st Cir. 2004).

### i.      Backdating and Assignment in "Blank"

In her opposition, Juarez argues for the first time that the corporate assignment attached to

her amended complaint demonstrates that the assignment was backdated.  She contends that the date

of the assignment could not have been June 13, 2007 because the execution signature was dated

October 16, 2008, not June 13, 2007 and that the assignment of the mortgage was therefore not

executed prior to the notice and foreclosure sale as required under Ibanez.  (Pl. Opp. at 5-6).  Juarez

further claims that the earlier assignment to U.S. Bank was made in "blank" and as a result, a later

recording could not have confirmed an earlier "blank" assignment.   None of these allegations are

in the amended complaint.  See Am Compl. ¶¶ 51-52.

Even if the Court were to allow Juarez to amend the complaint to include these allegations,

such amendment would be futile.  Juarez alleges in a conclusory fashion that the assignment in this

case was made "in blank" similar to the assignments in Ibanez.  Yet, Juarez's allegation is

contradicted by the corporate assignment attached to her amended complaint.  Specifically, the

corporate assignment shows that U.S. Bank was the assignee at the time of the notice of sale and

foreclosure sale.   (Am. Compl., Ex. C).  Thus, based on the exhibits attached to the amended

complaint, there was no assignment made "in blank" here.

Juarez's challenge to the corporate assignment on the ground that the execution signatures

are dated October 16, 2008, not June 13, 2007, making the assignment "backdated" is also deficient.

The Supreme Judicial Court instructed in Ibanez that "[w]here the earlier assignment is not in

recordable form or bears some defect, a written assignment executed after foreclosure that confirms

the earlier assignment may be properly recorded." 458 Mass. at 654. Here, the assignment was recorded on October 29, 2008. The date of assignment indicated on the corporate assignment is June 13, 2007, over a year prior to the foreclosure sale on July 22, 2008. The signatures indicating an execution date of October 16, 2008 were simply provided when the assignment was executed and notarized which <u>Ibanez</u> makes clear is permissible even if such execution occurs after the foreclosure sale. <u>See id.</u> The assignment in this case is therefore the exact type of confirmatory assignment the Court in <u>Ibanez</u> noted was sufficient.

### ii.   Validity of Assignment by New Century After Chapter 11 Filing

In her opposition, Juarez further contends that the assignment from New Century to U.S. Bank in June 2007 was "legally impossible" since the assignment occurred after New Century commenced bankruptcy proceedings in April 2007. (Pl. Opp. at 6-8).[7]  The amended complaint contains no allegation regarding the validity of the assignment of the mortgage based on New Century's filing of bankruptcy.

Even if the Court were to allow Juarez to amend her complaint to include this allegation, the amended complaint would nonetheless fail to state a plausible claim. Whether the date of transfer of title "immediately after" the closing on August 5, 2005 as alleged in the amended complaint, (Am. Compl. ¶¶ 40, 71) or June 13, 2007, the date of assignment noted on Corporate Assignment attached to Juarez's amended complaint, New Century's filing for bankruptcy in April 2007 does not, on its own, affect New Century's authority to assign the mortgage to U.S. Bank.   The

---

[7]Juarez alleges in her amended complaint only that New Century had filed for bankruptcy in April 2007, but does not allege that had any effect on the assignments of her mortgage or the validity of the foreclosure of the Property.

Bankruptcy Code, 11 U.S.C. §§ 101 *et. seq.*, allows those filing voluntary petitions for relief under Chapter 11 to continue to operate their businesses and manage their property as debtors in possession after filing for bankruptcy.  See §§1107(a) and 1108; see also In re Continental Air Lines, Inc., 61 B.R. 758, 762 n. 1 (S.D. Tex. 1986) (noting that "[d]ebtors-in-possession are automatically given leave to operate their business after filing of a Chapter 11 petition . . . the interplay between sections 1106, 1107, and 1108 makes it clear that the debtor has all of the statutory rights and duties of a trustee in bankruptcy, with a few limited exceptions"); In re UNR Industries, Inc., 30 B.R. 609, 612 (Bankr. D. Ill. 1983) (acknowledging that "[p]ursuant to Section 1108 of the [Bankruptcy] Code, debtors in possession are automatically given leave, standing in the place of a Trustee pursuant to Section 1107, to operate their businesses after the filing of the Chapter 11").

Here, the amended complaint does not allege, and Juarez does not argue, that New Century's Chapter 11 filing for bankruptcy April 2007 immediately dissolved the company, ceased the company's operations or divested the company of its assets.  See, e.g., In re Samuels, 415 B.R. 8, 21-22 (Bankr. D. Mass. 2009) (rejecting plaintiff's argument that a postpetition assignment of a mortgage is a transfer of property of the estate and a violation of an automatic stay).   Despite the bankruptcy filing, New Century retained the authority to confer upon SPS the power to act as attorney-in-fact to continue to service its past and present loan portfolio, including the execution of assignments of mortgages.[8]   The power of attorney dated June 20, 2007, specifically authorized SPS to "execute, acknowledge, seal and deliver . . . assignments of deed or trust/mortgage . . . ."  (Def.

_____

[8]The Confirmatory Assignment states that SPS executed the assignment on October 16, 2008 under a Power of Attorney granted by New Century.  (Am. Compl., Ex. C).

Sur-Reply, Ex. 1 (power of attorney)).  Acting under that authority, SPS recorded the confirmatory assignment here.

Juarez relies on New Century Mortgage Corporation v. Braxton, 2010 WL 59277 (Mass. Land. Ct. Jan. 11, 2010), to support her argument that New Century's assignment to U.S. Bank was invalid because the former had filed for bankruptcy prior to the assignment.  In Braxton, New Century, as plaintiff, brought an action against the defendant mortgagors to obtain a judgment of reformation of defendants' two mortgages.  Id. at *5.  The court granted summary judgment for defendants because New Century had failed to show, after being ordered to do so, how it had the authority to assign the mortgages of defendant mortgagors while bankruptcy proceedings were pending.  Id. at *5-6.  Despite Juarez's suggestion otherwise, the Court did not hold that the filing of a bankruptcy proceeding prevents a company from granting another entity the authority to execute an assignment of a mortgage on its behalf.  Id. at *6.  Rather, the Court held that since Plaintiff (New Century) did not submit sufficient proof that it was able to assign the mortgage while bankruptcy was pending when ordered to do so by the Court, Plaintiff could not show it had the authority to proceed with reforming defendants' two mortgages.

For the reasons stated above, even if Juarez were allowed to amend her complaint to add the allegations that were raised for the first time in her opposition such allegations are insufficient to state a legally plausible claim under M.G.L. c. 244, § 14.  Thus, granting leave to amend the complaint again to include these allegations would be futile.

### 2.     Count III:  Violation of M.G.L. c. 244, § 2

Count III of the amended complaint alleges that Defendants violated M.G.L. c. 244, § 2 when they filed a Certificate of Entry (Compl., Ex. D) that was not valid.  If a foreclosure is to be effectuated, the mortgagee must comply with M.G.L. c. 244, § 2, which provides:

> "Entry without judgment; certificate; recording.  If an entry for breach of condition is made without a judgment, a memorandum of the entry shall be made on the mortgage deed and signed by the mortgagor or person claiming under him, or a certificate, under oath, of two competent witnesses to prove the entry shall be made. Such memorandum or certificate shall after the entry, except as provided in section seventy of chapter one hundred and eighty-five, be recorded in the registry of deeds for the county or district where the land lies, with a note of reference, if the mortgage is recorded in the same registry, from each record to the other. Unless such record is made, the entry shall not be effectual for the purposes mentioned in the preceding section."

Juarez admits that U.S. Bank filed a Certificate listing two witnesses who affirmed they were present when Paul Fortey, as attorney-in-fact for U.S. bank, entered Juarez's residence on July 22, 2008.  (Am. Compl. ¶ 99).   However, Juarez claims that the Certificate is not valid on the grounds that:  (1) no one entered her residence on July 22, 2008 (Am. Compl. ¶¶ 99-100, 105); (2) the Certificate fails to identify the two witnesses in the acknowledgment section and fails to describe the satisfactory evidence of identity of each of the two witnesses (Am. Compl. ¶¶ 103-104, 107); and (3) no power of attorney was recorded along with the Certificate to evidence U.S. Bank's grant of authority to Paul Fortey.  (Am. Compl. ¶¶ 101-102, 106).

Juarez has failed to allege any factual support to show that the certificate of entry is not valid on these grounds under Mass. Gen. L. c. 244, § 2.   First, the Certificate of Entry, signed by two witnesses, was executed on July 22, 2008, and recorded on October 29, 2008.  Merely stating that no one entered her residence on July 22, 2008, without providing any factual allegations in support

16

thereof, is insufficient to challenge the Certificate.   Second, although Juarez alleges that the document is not signed by two witnesses in the "acknowledgment" section, the document is indeed signed by two witnesses and notarized.   (Am. Compl., Ex. D).   Third, the language of Mass. Gen. L. c. 244, § 2 does not require that a power of attorney be recorded with the Certificate as evidence of U.S. Bank's grant of authority to Mr. Fortey to enter Juarez's residence.   Juarez has offered no authority to the contrary.   Thus, Juarez has failed to state a plausible claim based on the invalidity of the certificate of entry in violation of G.L. c. 244, § 2.   Accordingly, dismissal is warranted as to Count III.

### C.      Fraud Claims

#### 1.      Count I:  Fraud

To prove fraud under Massachusetts law, a plaintiff must show that "the defendant made a false representation of material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage."   Taylor v. Am. Chemistry Council, 576 F.3d 16, 31 (1st Cir. 2009) (internal quotation marks and citation omitted).

Applying this standard, the amended complaint fails to plead a plausible fraud claim.   Juarez alleges that Defendants' representation that U.S. Bank held the Mortgage by assignment and that SPS acted on behalf of U.S. Bank, filing various documents during the foreclosure action indicating the same was material to the foreclosure proceedings, (Am. Compl. ¶¶ 68-70), and that "no mortgage Assignments were filed at the Suffolk Registry of Deeds evidencing the trail of sales . . . [of] Plaintiffs' First Mortgage Note . . . several times immediately after [the] August 5, 2005 closing." (Am. Compl.  ¶¶ 71-72).   Juarez claims that she relied on the Defendants' "representation of

ownership and was ignorant of the falsity of Defendants' representations" and, as a result, the

Property was sold twice. (Am. Compl. ¶¶ 84-85).[9]   However, Juarez fails to allege any justifiable

reliance on her part, namely how Defendants' representation that they owned the Mortgage and Note

when they initiated foreclosure proceedings was material to a decision she made during the

foreclosure process and that she was injured based on that reliance.   Juarez has not alleged that the

internal procedures of the PSA (and its assignment requirements) induced her to act in a specific

way in connection with the foreclosure of her residence.[10]

Moreover, Juarez has failed to satisfy the heightened pleading requirements of Rule 9(b) for

fraud claims.   Fraud claims must be plead with particularity.   Fed. R. Civ. P. 9(b).   See Hayduck v.

Lanna, 775 F. 2d 441, 444 (1st Cir. 1985) ("[M]ere allegations of fraud . . . averments to conditions

of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity

requirement, no matter how many times such accusations are repeated") (citing cases).   A complaint

---

[9]Despite Juarez's admission in her amended complaint that she entered into the loan transactions, made payments before default, defaulted on her Mortgage and knew her property would be foreclosed, she nonetheless raises a new claim challenging the validity of the note itself for the first time in her opposition.   Juarez has provided no factual allegations to support such a challenge in her amended complaint or opposition, and thus, has failed to state a plausible claim on these grounds.

[10]Although absent from her amended complaint, in her opposition to Defendants' motion, Juarez now claims that SPS's statement that the foreclosure sale could not be rescinded because the property was sold to a third party buyer was "intentionally deceptive" because the foreclosure auction was wrongfully conducted and is therefore void thus the new homeowners purchased nothing.   Juarez's newly raised allegation is wholly conclusory and devoid of any factual basis and as such, the Court need not accept this allegation as true for the purposes of Defendants' motion to dismiss.   See Iqbal, 129 S. Ct. at 1949-50.   In addition, the Court's analysis of the statutory claims under Mass. Gen. L. c. 244, § 14 of the allegation that U.S. Bank lacked the authority to foreclose on Juarez's residence supports the conclusion that amending the complaint to include an almost identical allegation regarding SPS would be futile.   Accordingly, Juarez cannot state a plausible claim for fraud or a c. 93A violation on this basis.

claiming fraud must detail the who, what, where and when of the alleged fraudulent statement. Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996); Varney v. R.J. Reynolds Tobacco Co., 118 F. Supp. 2d 63, 68 (D. Mass. 2000) (to allege fraud, "the plaintiff must at least tell who said (or failed to say) what, when, and where"). Here, the amended complaint fails to identify the fraudulent statement, who made that statement, as well as when and where the statement was made. Therefore, the amended complaint fails to satisfy the heightened pleading requirements of Rule 9(b) and fails to state a plausible fraud claim.

### 2.    Count IV: Violation of Mass. Gen. L. c. 93A

In Count IV of the amended complaint, Juarez alleges that Defendants violated Mass. Gen. L. c. 93A by engaging in unfair and deceptive acts or practices including failing to comply with Mass. Gen. L. c. 244, §§ 2 and 14, foreclosing on the Property and selling it a second time without any legal right and standing to do so, "both done with full knowledge of the fraudulent nature of the sale." (Am. Compl. ¶¶ 116-118).[11]

Section 9 of Chapter 93A provides a private cause of action for "any person . . . who has been injured by another person's use or employment of" an unfair or deceptive act or practice. Mass. Gen. L. c. 93A, § 9. To prevail on a Chapter 93A claim, the plaintiff "must prove that a person who is engaged in trade or business committed an unfair or deceptive trade practice and that the [plaintiff] suffered a loss of money or property as a result." Brandon Assocs., LLC v. FailSafe

---

[11]Although Juarez also references in her c. 93A claim that U.S. Bank failed to respond to her c. 93A demand letter (Compl. ¶ 114), failure to respond to a demand letter is not in itself an unfair or deceptive act or practice. Leet v. Cellco Partnership, 2007 WL 3332803, at *2 (D. Mass. Oct. 19, 2007) (Saylor, J.).

Air Safety Sys. Corp., 384 F. Supp. 2d 442, 446 (D. Mass. 2005) (citing Bowers v. Baystate Tech., Inc., 101 F. Supp. 2d 53, 54-55 (D. Mass. 2000) (further citation omitted)).

"[C]ausation is a required element of a successful G.L. c. 93A claim."  Aspinall v. Philip Morris Co., Inc., 442 Mass. 381, 401 (2004); see Massachusetts Farm Bur. Fed'n, Inc. v. Blue Cross of Mass., Inc., 403 Mass. 772, 730 (1989) ("In the absence of a causal relationship between the alleged unfair acts and the claimed loss, there can be no recovery"); Int'l Fid. Ins. Co. v. Wilson, 387 Mass. 841, 850 (1983) (noting that "plaintiff must show . . .  a causal connection between the deception and the loss").

Here, the amended complaint does not identify the unfair or deceptive practices of Defendants that caused Juarez harm.  It is undisputed that Juarez defaulted on her obligations and that the Property was subject to foreclosure and that she at no point offered to redeem by paying the amounts owed.  Juarez has failed to allege any causal connection between Defendants' actions and the loss of equitable title to the Property.   The allegations contained in the amended complaint are therefore insufficient to comprise a plausible M.G.L. c. 93A claim.   Accordingly, Defendants' motion to dismiss as to Count IV is GRANTED.

Juarez has therefore failed to plead allegations sufficient to survive a motion to dismiss on this basis as to all of the counts in the amended complaint.[12]

---

[12]In light of the Court's conclusion that the amended complaint fails to state a plausible claim, the Court need not reach whether dismissal is warranted under Rule 12(b)(7).

## V.   Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED.

**So ordered.**

/s/ Denise J. Casper
United  States  District  Judge