UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


C.A. No. 1:11-cv-10318-DJC

```
_____
                                        )
MELISSA A. JUAREZ                       )
                                        )
                  Plaintiff             )
vs.                                     )
                                        )
U.S. BANK, N.A., AS TRUSTEE ON BEHALF)
OF THE HOLDERS OF THE ASSET BACKED     )
SECURITIES CORPORATION HOME-EQUITY     )
LOAN TRUST, SERIES NC 2005-HE8,        )
ASSET BACKED PASS-THROUGH              )
CERTIFICATES, SERIES NC 2005-HE8,      )
SELECT PORTFOLIO SERVICING, INC.,      )
NEW CENTURY MORTGAGE CORPORATION, AND)
CHRISTOPHER FENCER AND JACQUELINE M.  )
FENCER f/k/a JACQUELINE M. DEVOE,      )
                                        )
                                        )
                  Defendants            )
_____)
```

**PLAINTIFF'S SECOND
AMENDED VERIFIED
COMPLAINT**


## PREFATORY ALLEGATIONS


1. The Plaintiff, Melissa A. Juarez (hereinafter "Plaintiff") is an  individual with a usual place of residence at 2 Hancock Street # 716, Quincy, in the Commonwealth of Massachusetts, 02171.

2. The property that is the subject of this law suit is located at 68 ½ Chickatawbut Street, Dorchester, Massachusetts

3. Defendant, U.S. Bank, N.A., as Trustee on Behalf of the holders of the Asset Backed Securities Corporation Home Equity Loan Trust, Series 2005-HE8, Asset Backed Pass-Through Certificates Series 2005-HE8, and who maintains a registered agent located at One Federal Street, 3rd Fl. Boston, MA 02110.

4. The Defendant, Select Portfolio Servicing, is a Mortgage Servicing Company, and successor in interest to Fairbanks Captial, with a business mailing address of PO Box 65250, Salt Lake City, UT 84165.

1

5. The Defendant New Century Mortgage Company, ("New Century")
   was the originating lender which purportedly is the payee on
   the Plaintiff's promissory note, which is also purportedly
   secured by the mortgage specifically given to New Century, who
   has a principal address of <u>New Century Liquidating Trust
   575 Anton Blvd., Suite 300, Costa Mesa, CA 92626</u>

6. The Defendants Christopher Fencer and Jacqueline M. Fencer,
   f/k/a Jacqueline M. Devoe, are the purported current title
   owners, and current residents of; <u>68 ½ Chickatawbut Street,
   Dorchester Massachusetts</u>, which under information and belief
   is their mailing address; and the subject property of this
   lawsuit.

## JURISDICTION AND VENUE

7. At the time of the Plaintiff's filing of the instant lawsuit
   in Suffolk County Superior Court, Plaintiff and Defendants;
   U.S. Bank, N.A., in its capacity as trustee for the Asset
   Backed Securities Corporation Home Equity Loan Trust, Series
   NC 2005-HE8, Asset Backed Pass-Through Certificates, Series
   NC-2005HE8, and Select Portfolio Servicing, Inc. were citizens
   of different states.

8. Thereafter Defendants Removed this Controversy to this Court
   under 28 U.S.C. § 1332, due to such diversity of citizenship
   of the parties, while also meeting the threshold dollar amount
   in controversy under the said U.S. Statute.

9. Herein, based upon the U.S. Court of Appeals for the First
   Circuit mandate in this matter, remanding the same back to
   this Court with instructions allowing the Plaintiff to amend
   her complaint, the Plaintiff submits the same.

10.   In the Joint Statement concerning the proposed pre-trial
   schedule in this matter, the parties agreed to allow the
   Plaintiff to amend her verified complaint and Join additional
   party(s) thereto.

11.   In compliance with the parties Joint Pre Trial scheduling
   Order, Plaintiff herein now Joins indispensable parties to
   this action; Christopher Fencer and Jacqueline M. Fencer,
   f/k/a/ Jacqueline M. Devoe, who are residents of
   Massachusetts.

12.   Therefore, all Defendants are not currently diverse under
   the requirements set forth under 28 U.S.C. § 1332.

13.   Under 28 U.S.C. § 1447(e), if after removal a plaintiff
   seeks to join additional defendants whose joinder would
   destroy subject matter jurisdiction, the court may deny

joinder, or permit such joinder and remand the action to the State court.

14. Here, as the parties agreed to the allowance for Plaintiff to Join parties under the Jointly submitted pretrial schedule under L.R. 16.1, the Plaintiff herein asserts that no prejudice will be visited upon the Defendants by a Remand of these proceedings back to Massachusetts State Court.

15. To Deny the Plaintiff her opportunity to Join the instate residents to this action, necessarily would prejudice the Plaintiff from exercising her right to regain title and/or occupancy to her real property at issue in this matter.

16. Only in order to protect the Plaintiff's claims in this matter, Plaintiff will set out her plausible allegations regarding her plausibly pled claims as against all Defendants below.

## FACTS AND TRAVEL

**The Origination of The Juarez Loan, and The Documents on The Suffolk County Registry of Deed**

17. On <u>August 05, 2005</u>, the Plaintiff, entered into a loan arrangement with <u>New Century Mortgage Corporation</u>. ("New Century"). <u>as the "originator"</u>, through the execution of a purported promissory note made payable specifically to <u>New Century Mortgage Corporation</u> in the amount of $351,000.00.[1]

18. On <u>August 05, 2005</u>, the Plaintiff, also entered into and executed a separate contractual Security Instrument agreement ("mortgage") specifically with <u>New Century Mortgage Corporation</u>, whereby, under Massachusetts state law, the Plaintiff specifically granted the title to the subject property, and the contractual right to enforce the power of sale in the Juarez' mortgage, specifically to ***New Century Mortgage Corporation***, <u>***not***</u> Asset Backed Securities Corporation Home Equity Loan Trust, Series 2005-HE8, Asset Backed Pass-Through Certificates Series 2005-HE8 ("the Defendant business trust").[2]

---

[1] Please see <u>Exhibit A</u>. Plaintiff's counsel wishes to state as an initial matter that due to the extremely complicated subject matter attendant to this area of the law, it is extremely difficult (if not impossible) to not be somewhat verbose, as the "securitization" of mortgages is about as unfathomably deep as a subject can get, and the Plaintiff's counsel apologies in advance for the extent of this complaint.

[2] Please see <u>Exhibit B</u>

19.   Therefore, the Defendant business trust is not the "original "lender", and thus under Massachusetts law, must establish its legal theory as to how it is in current possession of the legal title to the Juarez' real property, and the attendant right to enforce the power of sale in the Juarez mortgage contract on July 01, 2008 (the date of the first publication of its purported foreclosure auction sale of the Juarez real property in the Boston Globe).[3]

20.   On July 22, 2008, at 9:00AM, Defendant U.S. Bank, N.A. as Trustee for the Defendant business trust held a purported foreclosure auction sale of the Plaintiff's residence, that was conducted by a James Mahoney of Liberty Auctions, in which the Defendant Trustee was the highest bidder and purchaser, in a sale that garnered $325,869.45.[4]

21.   On July 22, 2008, a Paul Fortney, as purported "attorney in fact" for the Defendant U.S. Bank, N.A. as Trustee for the Defendant business trust, purports to create a document that purportedly represents a "Certificate of Entry".[5]

22.   The said "Certificate of Entry" states on its face that on July 22, 2008, the Defendant U.S. Bank, N.A. as Trustee for the Defendant business trust the Plaintiff (Melissa Juarez) "is the present holder of a certain mortgage given by Melissa Juarez to New Century Mortgage Corporation, its successors and assigns as their interest may appear". This purported document is caused to be recorded upon the Suffolk County Registry of Deeds at Book 44186, Page 126, on October 29, 2008.[6]

23.   On October 16, 2008, [almost 3 months antecedent to the above referenced purported foreclosure auction sale], one "Bill Koch", as purported "Document Control Officer" for Defendant Select Portfolio Servicing, Inc., purporting to act as "attorney in fact" for New Century Mortgage Corporation, purports to execute a document that purportedly represents an "Assignment" of the title to the Juarez real property, and purported interest in the Plaintiff's "Note" to the Defendant U.S. Bank, N.A. as Trustee for the Defendant business trust, "in consideration of the sum of TEN and NO/100ths Dollars and other good and valuable consideration, paid to the above named Assignor (New Century), the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above named Assignee, the said Mortgage and Note or other evidence of indebtedness ('the Note"), said Note having an original principal sum of $280,000.00 with interest, secured thereby, together with all moneys now owing or that may

---

[3] Please see Exhibit C
[4] Please see Exhibit C
[5] Please see Exhibit D
[6] Please see Exhibit D

hereafter become due and owing in respect thereof..."[7]

24.   The Above said purported "Assignment" was thereafter intentionally caused by Defendant(s) to be recorded upon the Suffolk County Registry of Deeds at Book 44186, Page 118 on October 27, 2008.

25.   On October 29, 2008, a purported Quit Claim Deed, purporting to transfer the interest in the title to one Christopher Fencer Individually, in exchange for full consideration of One Hundred Thousand dollars and no cents ($100,000.00), and is purportedly executed by one Cheryl E. Kreger "Document Control Officer –Vice President" of the Defendant Trustee on behalf of the Defendant business trust, as attorney in fact by Select Portfolio Servicing, Inc.[8]

26.   The above referenced Quit Claim deed purports to transfer such title to the Juarez property, (that purportedly solely relies upon a purported legal foundation purportedly derived from the above referenced purported foreclosure auction sale.

27.   The above referenced foreclosure auction sale of the Juarez' real property located at 68 1/2 Chickatawbut Street occurred almost 3 months prior to the Defendant Trustee on behalf of the Defendant business trust ever receiving the purported "assignment" of the Juarez' mortgage from New Century.

28.   Additionally, in handwritten script purporting to manipulate this purported recorded "Quit Claim" deed legal document on the Registry of Deeds, is also fashioned in such a manner as to now later purport that the said Quit Claim deed was now made in consideration of $200,000.00, and further made out to Christopher Fencer and one Jacqueline M. Devoe.[9]

29.   On October 31, 2008, this purported Quit Claim Deed is now caused to be recorded upon the Suffolk County Registry of Deeds, a mere two days after the purported "assignment" of the Juarez mortgage is recorded at Book 44186, Page 118 on October 29, 2008.[10]

30.   On October 20, 2010, the Plaintiff caused to be mailed to Defendant Select Portfolio Servicing, Inc., (SPS) on behalf of the Defendant Trustee, that succinctly stated the legally correct allegation that the purported foreclosure auction sale conducted by the Defendant Trustee was void, and made a legitimate offer of settlement requesting that the foreclosure

---

[7] Please see Exhibit E. An obvious question would be whether $10.00 is sufficient "good and valuable" consideration in a purported arms length business transaction to establish a bona fide "purchase".
[8] Please see Exhibit F
[9] Please see Exhibit F
[10] Please see Exhibit F

auction sale be rescinded.

31.   The Plaintiff's letter was answered by SPS on November 23, 2010, however summarily rejected the Plaintiff's claims and assertions, by wrongfully making a representation that a legally valid foreclosure auction sale took place, and therefore neither SPS, "nor the prior "note holder" held any interest in the property.[11]

## Procedural History

32.   On December 29, 2010, the Plaintiff filed a verified complaint in the Suffolk Superior Court

33.   On February 01, 2011, the Plaintiff filed an amended verified complaint in Suffolk Superior Court

34.   On March 18, 2011, the attorney for Select Portfolio Servicing on behalf of the Defendant Trustee, the Defendant Trust, and/or its Certificate holders Removed this matter to this Court, under 28 U.S.C. § 1332.

35.   On March 21, 2011, the attorney for Select Portfolio Servicing on behalf of the Defendant Trustee, the Defendant Trust, and/or its Certificate holders, immediately filed its Motion to Dismiss, and Memorandum of Law In Support thereof (Documents Nos. 10 and 11).

36.   On April 21, 2011, present counsel filed his Appearance in this matter.

37.   On April 27, 2011, present counsel filed Plaintiff's Opposition to the Defendant(s) Motion to Dismiss (Docket No. 21).

38.   On May 03, 2011, this Court granted the Defendants Motion to file a Reply to the Plaintiff's Opposition.

39.   On May 06, 2011, hearing was held on Defendant(s) Motion to Dismiss.

40.   On July 14, 2011, this Court Ordered all parties to submit Supplemental Memoranda regarding the impact of the New Century Mortgage Corporation bankruptcy, upon the instant proceedings.

41.   On July 21, 2011, the Defendants filed their Memorandum in response to the above referenced Order. (Docket No. 26).

42.   On July 25, 2011, the Plaintiff filed her response to the Court's July 14, 2011 Order regarding New Century Mortgage

---

[11] Please see Exhibit G

Corporation. (Docket No. 27).

43.  On <u>November 04, 2011</u>, this Court Granted the Defendants'
     Motion to Dismiss. (Docket Nos. 30, 31).

44.  On <u>December 02, 2011</u>, the Plaintiff timely filed her Notice
     of Appeal. (Docket No. 32).

45.  On <u>February 13, 2013</u>, the U.S. Court of Appeals issued its
     order and Mandate of reversal of docket 30, 31, and remanded
     this matter consistent with its opinion. (Docket No. 34).

**<u>G.L. c. 106 §3, and The Requirements To Enforce the Juarez Note</u>**

46.  Under information and belief, the original physical Juarez'
     promissory note has never been produced in this matter, and **<u>if</u>**
     the Juarez promissory note is a "negotiable instrument", it
     would be Governed by Article 3 of the Uniform Commercial Code,
     and codified in this Commonwealth under G.L. c. 106 §3.

47.  The Massachusetts Appeal Court, has recently ruled in *HSBC
     Bank U.S.A., as trustee* [12] *v. Paul Norris*, 83 Mass App. Ct.
     1115 (Feb. 28, 2012); that any "prospective effect" of the
     Massachusetts Supreme Judicial Court ruling in *Eaton v.
     Federal Nat'l Mortgage Ass'n* 462 Mass 569 (2012), would be
     abrogated for a litigant (such as Juarez here) who was arguing
     the necessity of the foreclosing entity be in possession of
     rights of enforcement of a borrowers promissory note at the
     time of the initiation of the foreclosure proceedings, to be a
     proper party under G.L. c. 244 § 14.[13]

48.  Thus, the prospective effect of *Eaton* is **<u>not</u>** applicable to
     the fact pattern presently before this Court, as argued by Ms.
     Juarez.

49.  G.L. c. 106 §3-309, provides the only exception for not
     producing the original Juarez promissory note, and the
     Defendant Trustee has not claimed any such exception.

50.  The Plaintiff also affirmatively asserts that under  G.L.
     c.106 §3-308, she is preemptively challenging the validity of
     all purported signatures on any purported original note,
     and/or Allonge, produced by the Defendant Trustee, in order to
     preserve her claims in this regard.

51.  The Plaintiff also affirmatively asserts that any Allonge
     produced by the Defendant Trustee would need to meet the

---

[12] For Nomura Asset Acceptance Corporation Mortgage Pass Through Certificate
Series 2005-AR3.
[13] Please see Exhibit H

strict requirements attendant to G.L. c. §3-204.

52. G.L. c. 106, § 3-104. States that the definition of a negotiable instrument is as follows:

(a) Except as provided in subsections (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a **fixed amount of money**, with or without interest or other charges described in the promise or order, if it:

(1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(2) is payable on demand or at a definite time; and

(3) **does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money**, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

53. At ¶5 of the purported copy of the Juarez Note, it requires an additional undertaking by the Plaintiff attendant to the payoff of the underlying debt, by specifically notifying the "lender" in writing_" prior to doing so, and additionally incorporates other contracts within the note, to make the determination of the amount owed not certain. [14]

54. In the alternative, the Plaintiffs' promissory note may also indicate that this purported transaction was designed to take place under the requirements of U.C.C. Article 9, as the Plaintiff's promissory note does not appear to meet the definition of a negotiable instrument as it is written,

## The Impact of The New Century Mortgage Corporation Upon and The Legally Ineffectiveness of The October 16, 2008 Purported Assignment of The Juarez' Mortgage

55. The assignment that the Defendants solely rely upon, now clearly indicates that it was executed on October 16, 2008, naming the assignee as New Century Mortgage Corporation purportedly through its Attorney in Fact Select Portfolio Servicing, Inc. executed and caused a purported "Assignment"

---

[14] See Exhibit A

of the Juarez mortgage, together with the Note or other evidence of indebtedness ("The Note"), and on October 29, 2008 caused the same to be recorded upon the Suffolk County Registry of Deeds at Book <u>44185</u>, Page <u>118</u>.[15]

56.  This purported "Assignment" described above, unequivocally states that it was executed on <u>October 16, 2008</u>, and specifically did not recite that it was confirmatory.[16]

57. This purported "assignment" is also purportedly executed by a Bill Koch "Document Control Officer", whose purported "execution" consists entirely of a solitary letter "*B*"[17]

58. G.L. c. 184 § 54B only speaks to the ability of an agent to bind a principal. The Plaintiff's allegations are based upon the failure of the purported principal New Century Mortgage Corporation to make any proffer that it is/was ever in any possession of the Juarez title to assign to the Defendant Trustee.

59. Therefore, any reference to the applicability of G.L. c. 183 § 54B by Defendant(s), in which the said statute only speaks to the ability of an agent to bind a principal is superfluous, completely off point, and irrelevant, and only submitted to confuse the issue, where Plaintiff's challenge is as against the principal itself.

60. It is incontrovertible by Defendants that New Century Mortgage Corporation filed for Bankruptcy protection on **April 2, 2007**.

61. In the course of the New Century Bankruptcy, The New Century Debtors requested to operate as a Debtor In Possession ("DIP").[18]

62. As part of this request, a "stalking horse bid" was submitted by Greenwich Financial to sell the entirety of the remaining 2,000 loans that New Century had an ownership interest in, as of the time of its bankruptcy filing.

---

[15] Please see <u>Exhibit E</u> - The Defendants had previously sought to rely upon a mere "printed date" of June 13, 2007, to stand for the proposition that the October 16, 2008 purported "assignment" was merely "confirmatory", a notion that on Appeal, the First Circuit rejected out of hand.

[16] Please see <u>Exhibit E</u> - The Massachusetts Supreme Judicial Court in *U.S. Bank v. Ibanez* 637 Mass. 438 (2011) clearly stated that any "assignment" that purports to "confirm" an earlier "assignment "must actually confirm an earlier legally valid assignment", and that in Massachusetts an assignment of mortgage is "a transfer of an interest in land that must be evidenced by an executed writing from the Grantor to a named Grantee".

[17] Please see <u>Exhibit E</u>

[18] Including New Century Mortgage Corporation.

63. It is also incontrovertible by Defendants that 100% of New

Century Mortgage Corporation's business model, consisted
entirely of "wholesale origination" of mortgage loans, in
which New Century supplied a pipeline of mortgages to the
secondary "securitized mortgage market where the rights to
the borrowers monthly mortgage payments were converted and
sold as "bonds or certificates" to unwitting investors,

64. It is further indisputable by the Defendant Trustee that the
only mortgage loans that New Century purportedly still had
any "ownership interest " in, subsequent to the date of New
Century filing for bankruptcy in April of 2007, were 2,000
loans identified internally as "Loans Not Financed Anywhere"
("LNFA").

65. It is further indisputable by the Defendant Trustee that the
Debtor's (New Century, et. al.) April 2, 2007 Asset Purchase
Agreement drafted between New Century and Greenwich Capital
Financial Products, Inc., at page 4, defines the only
mortgage loan assets held by New Century, as "<u>LNFA Mortgage
Loans</u>".[19]

66. It is further indisputable by the Defendant Trustee that, in
the New Century Mortgage Corporation Bankruptcy hearing on
<u>April 3, 2007</u>, <u>at page 57 of the hearing transcript</u>, the
Attorney representing New Century Mortgage Corporation
clearly states, on the record, that the "mortgage assets"
that New Century Mortgage Corporation had retained at the
time of filing for Chapter 11 Bankruptcy with regards to
mortgage loans were grouped into categories; <u>Loans Not
Financed Anywhere</u> (LNFA) and "Residuals", which entailed cash
received by New Century from the Securitized Trust Pools, as
proceeds from the mortgage backed securities sales.[20]

67. It is further indisputable by the Defendant Trustee that at
Article 8, of the Asset Purchase Agreement described above,,
at page 17, states that these 2000 "LNFA" loans were sold on
a "servicing released" basis, meaning that the purchaser of
the "ownership interests" in the LNFA loans [Ellington],
involved a completely separate financial transaction from the
sale of New Century's servicing platform business asset [to
Carrington].[21]

68. It is further indisputable by the Defendant Trustee that on
<u>April 2, 2007</u>, New Century submitted an Emergency Motion of
Debtors and Debtors in Possession for Interim Orders Pursuant
to U.S.C. §§ 105, 362 and 364, and Federal Rules of
Bankruptcy Procedure 2002, 4001, and 9014(A) Approving Debtor

---

[19] Please Exhibit I
[20] Please see Exhibit J
[21] Please see Exhibit I

In Possession Financing.[22]

69. It is further indisputable by the Defendant Trustee that at Page 6, Line 16 of the above referenced Emergency Motion submitted by New Century, states as follows:

"The need for stability is particularly critical since the Debtors largely operate a servicing business"[23]

70. It is further indisputable by the Defendant Trustee that at page 7, Line 18 of the above referenced Emergency Motion submitted by New Century, states as follows:

"This Motion does not seek the approval of a large DIP loan, certainly not in comparison to the billions of dollars in financing the Debtors utilized [prepetition. The DIP loan proposed herein is a scaled down facility designed to allow the Debtors to quickly auction their business and to maintain these operations in a stable condition pending the completion of these sales".[24]

71. It is further indisputable by the Defendant Trustee that at page 8, Line 20, of the above referenced Emergency Motion submitted by New Century, states as follows:

"This is not a defensive DIP loan proposed by a group of existing pre-petition lenders. Rather, the proposed DIP loan is a stand-alone facility provided by one lender, CIT, as an independent business matter, and by one other member of the DIP lending syndicate, Greenwich, as an independent loan and in order to help finance the Debtors as an ongoing concerns so that Greenwich can make a bid for certain of the Debtors' assets".[25]

72. It is further indisputable by the Defendant Trustee that at page 9, Line 24, of the above referenced Emergency Motion submitted by New Century, states as follows:

"Tranche A is a revolving loan facility with a borrowing base keyed to a variety of Debtors' unencumbered assets (i) a pool of mortgage loans with a face principal amount of approximately $173 Million, (ii) various residual interests in mortgage loan securitization trusts (i.e. mortgage backed securities), (iii) state and Federal Income Tax refunds that Debtors are seeking in an amount of $113 Million,

---

[22] Please see Exhibit K
[23] Please see Exhibit K
[24] Please see Exhibit K
[25] Please see Exhibit K

(iv) a limited partnership interest in Carrington Investment Partners (US), LP ("Carrington"), and (iv) the Debtors' rights to **service** mortgage loans for a variety of securitization trusts and third party wholesale loans purchased on mortgage loans originated by Debtors and subsequently sold to these purchasers".[26]

73. It is further indisputable by the Defendant Trustee that at page 10, Line 25, of the above referenced Emergency Motion submitted by New Century, describes very clearly that the "Tranche B piece", deals solely with DIP financing to solely maintain the New Century <u>servicing business as a DIP</u>.[27]

74. It is further indisputable by the Defendant Trustee that under the Bidding procedures, a specific plan was set forth to <u>divest the DIP of the New Century ownership</u> of the entirety of these 2000 LNFA loans remaining in the New Century Debtors' Bankruptcy Estate.[28]

75. On <u>June 29, 2007</u>, under the plan set forth in the "Bidding Procedures", Ellington Capital Inc., was the successful bidder (and purchaser) and thus on this date acquired the ownership of the <u>entirety of the remaining 2,000 LNFA loans</u> that were owned by the New Century Bankruptcy Estate, thus completely divesting the New Century Debtors, and the DIP, of any ownership interest in any mortgage loan on this date.

76. It is further indisputable by the Defendant Trustee that on <u>February 2, 2008</u>, the New Century Debtors submitted an "Amended Disclosure Statement for the Joint Liquidation of the Debtors and The Official Committee of Unsecured Creditors".[29]

77. It is further indisputable by the Defendant Trustee that on page 29, of the above referenced <u>Amended Disclosure Statement</u> submitted by New Century, at Section III(C)(6) Asset Sales, discusses the events that had transpired, with regards to <u>New Century's divestment of its "owned" assets</u> (as opposed to its servicing assets).[30]

78. It is further indisputable by the Defendant Trustee that on page 29, at Subsection (a), of Section III(C)(6) of the above referenced <u>Amended Disclosure Statement</u>, this document clearly describes "<u>The First Sale of LNFA and Residuals</u>".[31]

---

[26] Please see Exhibit K
[27] Please see Exhibit K
[28] Please see Exhibit L
[29] Please see Exhibit L
[30] Please see Exhibit L
[31] Please see Exhibit L

79. It is further indisputable by the Defendant Trustee that the
section described in the above paragraph also very clearly
describes that there were approximately only 2,000
residential mortgage loans "owned" by the New Century
Mortgage Corporation [LNFA].[32]

"These loans, either because of quality or timing, were
not    subsequently    the    subject    of    a    repurchase
transaction and are generally referred to as "LNFA" or
"loans not financed anywhere". Other loans in this pool
were originated by the Debtors but were never financed
under a repurchase agreement or disposed of in a loan
sale in the secondary market. The Mortgage Asset Bid
Procedures Motion Proposed that Greenwich' Agreement to
purchase the Mortgage Assets for $50 Million would
serve        as        the        "stalking        horse        bid".

80. It is further indisputable by the Defendant Trustee that on
page 30, at Subsection (a), of Section III(C)(6) of the
identical referenced Amended Disclosure Statement, it
describes "The First Sale of LNFA and Residuals" and further
succinctly states the following:

"On April 12, 2007, the Bankruptcy Court entered an
Order approving the Mortgage Assets Bid Procedures,
including a breakup fee of $945,000 to be paid to
Greenwich in the event that Greenwich was not the
successful bidder for the mortgage assets [NC BK Docket
No. 226]. The auction for the Mortgage Assets was
concluded on May 2, 2007. After nine rounds of bidding,
the winning bidder for the Mortgage Assets was
Ellington Capital Management Group, L.L.C. on behalf of
its clients' funds ("Ellington"). NCFC, and NC Asset
holding (together the "Mortgage Asset Sellers"), on one
hand and Ellington, on the other hand, entered into an
Asset Purchase Agreement ("the Ellington Agreement")
dated as of May 2, 2007 and approved by the Bankruptcy
Court by Order dated May 7, 2007 (the Mortgage Asset
Sale Order"), pursuant to which Ellington agreed to
purchase the Mortgage Assets for approximately $58.0
Million [NC BK Docket No. 566]"[33]

81.      It is further indisputable by the Defendant Trustee
that THE Amended Disclosure Statement states at page 30:

"On May 18, 2007, the sale of the Mortgage Assets to
Ellington Closed. After giving effect to certain
closing adjustments, the net purchase price paid by
Ellington was approximately $57.9 Million, including

---

[32] Please see Exhibit L

[33] Please see Exhibit L

13

approximately $2.6 Million deposited by Ellington into an escrow account to indemnify Ellington for claims made under the Ellington Agreement, and payment of the Greenwich break-up fee."[34]

82. It is further indisputable by the Defendant Trustee that page 30 recites that on <u>June 25, 2007</u>, the "Mortgage Asset Sellers" and Ellington entered into a Supplement No. 1 to the original Ellington agreement ("Supplement 1), pursuant to which Ellington agreed to purchase certain additional mortgage loans originated by the Mortgage Asset Sellers ("the Additional Mortgage Loans") for approximately $4.4 Million.[35]

83. It is further indisputable by the Defendant Trustee that The Bankruptcy Court entered an order approving this Additional Mortgage Loan Sale to Ellington Capital on <u>June 27, 2007</u> [NC BK Docket No. 1715]. The closing of this sale occurred on <u>June 29, 2007</u>.

84. It is further indisputable by the Defendant Trustee that on page 34, of the above document, at subsection (f.) "<u>Sale of Additional LNFA (Including Ohio Loans)</u>", describes the sale of the remaining 46 Mortgage Loan Assets held by New Century, that were subject to "complications related to the State of Ohio, or because work was required to clear title to the loans." 41 of these remaining 46 loans were purchased by GRP Financial Services Corp. ("GRP"), and the purchase was approved by the Bankruptcy Court on <u>January 9, 2008</u>, [NC BK Docket Nos. 4361, 4556].[36]

85. On <u>June 29, 2007</u>, in the Bidding procedures set up to divest these loans from the New Century Bankruptcy Estate, <u>Carrington Mortgage</u>. purchased from the New Century Bankruptcy Estate, entirety of the remaining <u>mortgage servicing rights</u> to loans the New Century serviced for numerous securitized trusts.

86. It is further indisputable by the Defendant Trustee that, in the <u>July 2, 2008</u> <u>Opinion on Confirmation</u> of the New Century bankruptcy, the Honorable Judge Kevin J. Carey clearly discusses the fact that <u>all of the mortgage assets</u> held by the debtor (New Century Mortgage Corporation, et. al.) at the time of bankruptcy were limited to these same 2,000 LNFA loans, and that a "bidding procedures" protocol had been established, in order for the DIP to divest its interests in all mortgage assets held by the debtor.[37]

87. It is indisputable by the Defendants that on May 07, 2007, the Bankruptcy Court Approved the sale of the "mortgage

---

[34] Please see Exhibit L
[35] Please see Exhibit L
[36] Please see Exhibit L
[37] Please see Exhibit M

assets" to Ellington Capital.[38]

88. It is indisputable by Defendants that the 2000 LNFA loans owned by New Century sold to Ellington are identified on a "LNFA Schedule".[39]

89. It is indisputable the the Order granting the sale of New the New Century mortgage servicing platform was approved on May 23, 2007.[40]

90. Thus, it can be conclusively established by the Plaintiff that New Century was <u>completely divested</u> of any ownership or mortgage servicing rights to any mortgage loan (including the Juarez loan) as of <u>June 29, 2007</u>.

91. Therefore, it is completely indisputable by the Defendant Trustee that based upon the entirety of the New Century Bankruptcy docket, <u>ALL</u> ownership of the "Mortgage Assets" held by the New Century DIP was sold to Ellington Capital, and therefore the DIP was completely divested of the same as of <u>June 29, 2007</u>.

92. Therefore, it is completely indisputable by the Defendant Trustee that based upon the entirety of the New Century Bankruptcy docket, <u>ALL</u> ownership of the New Century mortgage servicing platform, held by the New Century DIP was sold to Carrington, and therefore the DIP was completely divested of the same as of <u>June 29, 2007</u>.

93. The purported "assignment" recorded upon the Norfolk County Registry of Deeds that the Defendants solely rely upon, clearly states that Select Portfolio, as <u>Attorney in Fact for New Century Mortgage Corporation</u>, made a direct assignment of the Juarez mortgage and note to the Defendant Trust on <u>October 16, 2008</u>.[41]

---

[38] Please see Exhibit N
[39] Please see Exhibit O
[40] Please see Exhibit P-1, P-2.
[41] Again, as the First Circuit duly noted in this matter, should the Defendant Trustee again take the position that this purported "assignment" is merely "confirmatory" in nature, it would have to overcome the obvious observation that the document itself quite clearly articulates that the assignment purports to have ***taken place at its execution*** (October 16, 2008). <u>Secondly</u>, if this court still will hear the Defendant Trustee on this issue, as Defendant only claims rights as a purported assignee, not "lender", the Massachusetts Supreme Judicial Court has clearly spoken that when an assignee relies upon an assignment(s) of mortgage, as in the Commonwealth this represents a <u>transfer of an interest in land</u> requires an executed writing(s) from the named Grantors to a named Grantees in the chain of title leading back to the originating "lender". Further, where the "assignment" of mortgage is claimed to be "confirmatory", it must confirm an actual legally valid earlier assignment, which would require production of the purported earlier executed writing(s)

94. Therefore, it is completely indisputable by the Defendant Trustee that based upon the detailed documentary evidentiary foundation consisting of the Plaintiff's proffered documents from the New Century Bankruptcy docket, that on <u>October 16, 2008</u> [the date of the Defendant(s) purported receipt of an "assignment"] it was legally impossible for Select Portfolio Servicing, Inc. to have acted as "attorney in fact" for a purported principal (New Century) as "assignee", that held no mortgages, or servicing thereof, after <u>June 29, 2007</u>.

95. Therefore, the Defendant Trustee cannot credibly contest that it received a <u>legally effective</u> "assignment" of the Juarez note and mortgage on <u>October 16, 2008</u> directly from Select Portfolio Servicing, Inc. as a purported "attorney in fact" for New Century Mortgage Corporation as a "Debtor In Possession", as such purported "assignment" is clearly legally impossible as outlined above.

96. Under information and belief the said assignment was willfully, and intentionally, submitted by Select Portfolio Servicing, Inc., as the mortgage servicer co-conspirator Defendant(s), in order to intentionally create the appearance that the Defendant trustee had the current legal standing as a real party in interest to be able enforce the Juarez note and its security interest therefore, under the strict requirements attendant to G.L. c. 244 § 14.[42]

97. The entirety of the above also clearly calls into question the candor of all of the party's attendant to such a purported execution and recordation of such purported "assignment".


**<u>U.S. Bank Nat'l Ass'n, as Trustee, on Behalf of The Holders of The Asset Backed Securities Corporation Home Equity Loan Trust Series NC 2005 HE8,</u>**

98. The Asset Backed Securities Corporation Home Equity Loan Trust Series NC 2005 HE8 Trust is an express common law business trust.

99. The law Governing the formation and/or operation of the Defendant trust is state law.

---

from the named Grantor (New Century) through all the named and off record Grantee(s) of the Juarez title, which is being purportedly "confirmed".

[42] Indeed, in mortgage securitization, the mortgage servicer is given complete autonomy, and latitude, to solely direct, conduct, and carry out, the foreclosure process This situation is akin to the proverbial "fox guarding the hen house".

100.    In the Appeal of this matter before the U.S. Court of Appeals for the First Circuit, it did not reach the issue of the Plaintiff's challenge to the Defendant's claimed title to the Plaintiff's residence, as only a purported assignee, regarding the deficiencies to follow the controlling terms of the Defendant Trust's Governing Documents.[43]

101.    Under information and belief, such governing state law of the Defendant Trust, and its Trustee regarding its formation and or dominion and control over the Plaintiff's mortgage and note, would be from the State of New York. However without the benefit of discovery, Plaintiff is currently estopped from having definitive scienter of such.

102.    Unlike most mortgage securitizations, when the Registration statements were filed with the Securities and Exchange Commission, with regard to the Defendant offering, a Pooling and Servicing Agreement was <u>not</u> filed, only a "Prospectus Supplement".[44]

103.    Indeed, the Defendant business trust is further unique, in that the Plaintiff can definitively establish that the GUARANTEED PASS-THROUGH CERTIFICATES FANNIE MAE TRUST 2007-101, maintains a significant ownership stake in the Defendant Trust, and its "assets".[45]

104.    On September 02, 2011, the Federal Housing Finance Agency, (FHFA) acting as Conservator for Fannie Mae, initiated a lawsuit against Credit Suisse, and its subsidiaries (including Asset Backed Securities Corporation, the Depositor of the Defendant Trust before this Court).[46]

105.    Indeed, in the referenced FHFA complaint above, the very Defendant Trust in the matter presently before this Court, is clearly identified as one of the offerings that Fannie Mae has an significant ownership interest in, and was making claims as against Credit Suisse as underwriter.

106.    At page 21, ¶ 51, of the FHFA Complaint, it clearly states as follows regarding the concept of "mortgage securitization"

---

[43] The Appeals Court "noted without deciding" that many cases in this District have found that a Plaintiff homeowner lacks standing to challenge the PSA, as the Homeowner is not a party or third party beneficiary of such PSA.  This statement is reflective of the fact that all of the First Circuit citation to its case law was based upon cases making completely different arguments that the Plaintiff Juarez advances here. Even a cursory review of the pleadings in Juarez here, show the complete distinction from all of the cited cases.
[44] Please see <u>Exhibit Q</u>, at page 24 (p. 28 of pdf).
[45] Please see <u>Exhibit R-1</u>, <u>R-2</u>; and <u>R-3.</u>
[46] Please see <u>Exhibit Q</u>

"Once the mortgage loans were transferred to the trusts <u>in accordance with the PSAs</u>, each trust issued Certificates backed by the underlying mortgage loans. The Certificates were then sold to investors like Fannie Mae and Freddie Mac, which thereby acquired an <u>ownership interest in the assets of the corresponding trust</u>. Each Certificate entitles its holder to a specified portion of the cash flows from the underlying mortgages in the Supporting Loan Group. The level of risk inherent in the Certificates was a function of the capital structure of the related transaction and the credit quality of the underlying mortgages." [47]

107.   At page 2 of the FHFA Complaint it defines the Defendant Trust before this Court as follows:

"Asset Backed Securities Corporation Home Equity Loan Trust Asset Backed Pass-Through Certificates, Series NC 2005-HE8 ("ABSHE 2005-HE8")"[48]

108.   At page 24, n. 10 of the FHFA Complaint, it notes that there was no PSA filed with the Defendant Trust"

"In the case of four Securitizations—<u>ABSHE 2005-HE8</u>, CSFB 2005-12,FMIC 2005-3, and FMIC 2007-1—the Form 8-K filing was not accompanied by the PSA."[49]

109.   The Prospectus Supplement of the Defendant Trust, also is unique in that it very clearly describes that there was a "Pool Insurance Policy" issued on approximately 93% of the mortgage loans in the corpus of the Defendant Trust, in which the "Covered Loans" would be indemnified for a percentage of losses.[50]

110.   The Prospectus Supplement of the Defendant Trust, also is unique in that it very clearly describes that there was a "Certificate Guarantee Insurance Policy, issued by CIFG

---

[47] Please see <u>Exhibit Q</u> - However, the Massachusetts Supreme Judicial Court was exceeding clearly with regards to mortgages finding their way into the secondary mortgage market, stating: "Where, as here, mortgage loans are pooled together in a trust and converted into mortgage-backed securities, the underlying promissory notes serve as financial instruments generating a potential income stream for investors, but the mortgages securing these notes are still legal title to someone's home or farm and must be treated as such." U.S. Bank Nat'l Ass'n v. Ibanez 458 Mass 637, 649 (2011).
[48] Please see <u>Exhibit Q</u>
[49] Please see <u>Exhibit Q</u>

[50] Please see <u>Exhibit S</u>, Page S-13, S-71.

Assurance, North America" issued on the A1A "Tranche" for credit enhancement for the securities in this particular tranche.[51]

111.    The Prospectus Supplement of the Defendant Trust, also is further unique in that it very clearly describes that with regards to foreclosure, the Prospectus Supplement, in the "Prospectus Section at p. 93 states as follows:

"In case of foreclosure under either a mortgage or deed of trust, the sale by the receiver or other designated officer, or by the trustee, is a public sale. However, because of a number of factors including the difficulty a potential buyer at the sale would have in determining the exact state of title, and the fact that the physical condition of the property may have deteriorated during the foreclosure proceedings, it is uncommon for the lender to purchase property from the trustee or receiver for a credit bid less than or equal to the unpaid principal amount of the note, accrued and unpaid interest and the expenses of foreclosure. Subsequently, subject to the right of the borrower in some states to remain in possession during the redemption period, the lender will assume the burdens of ownership, including obtaining hazard insurance and making repairs at its own expense as are necessary to render the property suitable for sale. The lender commonly will obtain the services of a real estate broker and pay the broker commission in  connection with the sale of the property. Depending on market conditions, the ultimate proceeds of the sale of the property may not equal the lender's investment in the property. Any loss may be reduced by the receipt of mortgage insurance proceeds".[52]

112.    The Prospectus Supplement clearly defines the chain of title of parties that held an interest in the mortgage loan corpus in its purported conveyance to the Defendant Trust.

   a. Issuer        Asset Backed Securities Corporation Home
                    Equity Loan Trust, Series NC 2005-HE8

   b. Depositor     Asset Backed Securities Corporation

   c. Seller –      DLJ Mortgage Capital, Inc.

---

[51] Please see Exhibit S, Page S-13, S-71.The A1A Tranche is also clearly identified to be among the ownership of the corpus of the "Guarantee Pass Through Fannie Mae Trust 2007-101".
[52] The use of the term "lender" is a misnomer, as it is clearly the mortgage servicer [who in many cases was also previously wearing the "hat" of the "lender"] who carries out the duties described in the above paragraph. Additionally, there is no longer any "lender" involved (under the securitization process), only purported assignee(s).

d. <u>Originator</u> – New Century Mortgage Corporation[53]

113.    The Prospectus Supplement also clearly defines the date certain requirement to convey the mortgage loan corpus [including the Juarez note and mortgage] in its purported conveyance to the Defendant Trust, as "on or about October 28, 2005"; the "Closing Date" as On or about October 28, 2005.[54] (See <u>Exhibit S</u>, page S-6)

114.    Based upon the entirety of the foregoing, the Defendant Trustee has not, and indeed cannot, legally establish that the Juarez mortgage and note are legally among the Defendant trust's corpus; sufficient to assert legal dominion and control over the title to the Juarez property and note to be a proper real party in interest to enforce the power of sale in the Juarez mortgage under the harsh and draconian non-judicial foreclosure process contemplated by G.L. c. 244 § 14.

115.    The Plaintiff asserts that as the Guaranteed Pass Though Certificates Fannie Mae 2001-101 Trust clearly has a stated a purported significant ownership interest in the Defendant Trust, and thus without discovery it is entirely unclear that the Defendant Trustee would have any purported claim to the Juarez note and mortgage, as any real party in interest based upon this paragraph, and others directly related, allegations alone.

116.    Additionally, the Plaintiff states that even if the Juarez note and mortgage were legally among the corpus of the Trust (which Juarez vehemently denies), such corpus is clearly covered by an indemnity mortgage insurance policy, and or a Certificate Insurance policy. Thus, the Trust would not be a proper party as it would have been indemnified, and could not "collect twice" on the same loss.


**<u>Defendant's Purported Present Claim to Title of The Plaintiff</u>**
**<u>Mortgage Clearly Does Not Establish Legally Sufficient Title on</u>**

---

[53] See <u>Exhibit S</u>, at page S-5)
[54] Such "Closing Date" is not an arbitrary date that could be "ratified", as the issuance of the Certificates to Investors (including Fannie Mae) are issued as "asset backed", involving a specific finite grouping of loans, with a specific principal balance, and identified as of the "Cut Off" Date, defined as October 01, 2005. (See Exhibit S, page S-6) See also at S-5, identifying the specific "Mortgage Pool" as 7,879 fixed rate and adjustable rate mortgage loans, .....with a specific aggregate principal balance of $1,411,090,290.00 as of the Cut Off date, secured by first and second liens on residential properties".

**Behalf of Defendant To Currently Enforce The Power of Sale In The**
**Juarez' Mortgage Under G.L. c. 244 § 14**

117.    Here, based upon the documents associated and filed by
the Defendant Trustee in relation to the Plaintiffs' title on
the Suffolk County Registry of Deeds , leaves Defendant's
claim of ownership of the Plaintiffs mortgage in want, by not
providing any legally sufficient evidentiary proffer,
submitted under proper evidentiary rules, that any transfer
of the Juarez' mortgage ever took place by way of legally
effective "assignment" that is evidenced by a legally
sufficient executed writing from a legally valid Grantor to a
legally valid Grantee as required under historical
Massachusetts case law precedent, prior to the July 22, 2008
purported foreclosure auction sale intentionally conducted by
the Defendant Trustee, and the balance of the Defendants.

118.    Defendant has not provided any proffer that indicates
that it has any current right or status as the current
"holder" (as that term is historically been identified in
this Commonwealth to include both the holder of the note
and/or the owner of the right to exercise rights granted in
its security instrument) to enforce the non-judicial power of
sale in the Plaintiffs' mortgage under the strict
requirements of G.L. c. 244 § 14.

119.    In fact the proffers made by the Defendant Trustee
conclusively establish that it cannot now, nor ever be a
proper party to enforce the power of sale against Plaintiffs
under G.L. c. 244 § 14, or under the Defendant Trust's own
controlling terms.

120.    G.L. c. 244 § 14, provides that only the "holder of the
mortgage" at the time of the first publication of the
foreclosure auction sale of the mortgagor's premises in a
newspaper with sufficient local circulation, is cloaked with
the legal standing and authority as the moving party in the
non-judicial foreclosure process, to foreclose under the
strict requirements of G.L. c. 244 § 14.

121.    On October 27, 2008, the Defendant Trustee purposely
caused to be recorded in the Suffolk County Registry of
Deeds, a purported "assignment" of the Juarez mortgage, "and
note or notes referred to therein", purportedly executed on
October 16, 2008.

122.    At all times after the purported October 16, 2008
"assignment" of the Plaintiffs' mortgage caused to be
recorded on the Suffolk County Registry of Deeds the
Defendant Trust maintained the outward appearance to the

world that it was the current owner of the Plaintiff's mortgage.

123.     This purported "assignment" was a legal impossibility.

124.     If the Defendant Trustee seeks to make the argument that this purported "assignment" is merely "*confirmatory*" in nature, the Massachusetts Supreme Judicial Court recently spoke the requirement that any assignment of mortgage that purports to "confirm" an earlier assignment, can only confirm an actual legally validly made assignment. [55]

125.     In *U.S. Bank v. Ibanez* 637 Mass. 438 (2011), the Massachusetts Supreme Judicial Court *was presented with a case that* involved Quiet Title actions brought by *U.S. Bank* and Wells Fargo, (as Trustees for the respective securitized trusts in those actions), under G.L. c. 240 § 6, seeking declarations of clear title as against two foreclosed upon homeowners The Plaintiff Trustee's in that action argued that that the defendant mortgagors' titles had been extinguished through legal, and <u>validly</u> conducted, foreclosure auction sales, and that as a result of these sales, the Plaintiff Trustees claimed title as the current fee simple owners of the foreclosed properties on behalf of the Certificate-holders of these trusts. [56]

126.     As such the Plaintiff Trustees in *Ibanez* bore the burden of establishing their entitlement to the relief they sought. *Sherriff's Meadow Found, Inc. v. Bay Courte Edgartown, Inc*. 401 Mass 287, 269.

127.     However, as the *Ibanez* Plaintiff Trustee foreclosing entities sought to prove their superior title based upon the foreclosure sales of the *Ibanez* and *LaRace* properties, the Plaintiff Trustee foreclosing entities were required to show their compliance with the Massachusetts foreclosure statutes, in order to obtain the clear title they requested.

128.     Thus, *Ibanez* is instructive as to the legal foundational requirements of Massachusetts state law regarding a state law issue, that must be satisfied by the moving party foreclosing entities (such as the Defendant Trustee here before this court) under G.L c. 244 § 14, in order to legally comply the strict procedures and protocol of

---

[55] "A confirmatory assignment , however cannot confirm an assignment that was not validly made earlier or backdate an assignment being made for the first time, <u>U.S. Bank v. Ibanez</u> at p. 654. (quoting Scalpen v. Blanchard, 187 Mass. 73, 76 (1904))

[56] The Plaintiff's counsel represented the <u>*LaRace*</u> family in this matter before the Land Court, as well as before the Massachusetts Supreme Judicial Court.

the non-judicial foreclosure process in this Commonwealth.

129.     In this Commonwealth, an assignment of mortgage is a transfer of an interest in land that requires a executed writing from the Grantor to a named Grantee.[57]

130.     The previous paragraph has been held to apply where a mortgage has been "securitized" for purported sale into a securitized trust (as Defendant clams here before this court).[58]

131.     As the Defendant Trust is not the original "mortgagee" or "Lender", as only a mere purported "assignee" of the contractual rights that Juarez granted only to New Century Mortgage Corporation, the Defendant Trustee would need to establish its chain of title to the mortgage from the originating lender to it. [59]

132.     As the Juarez mortgage may travel independently of the note in Massachusetts,  and as the assignment of mortgage is a transfer of interest in land in this Commonwealth, in order for the Defendant trustee to claim current legal title to the mortgage recorded on the Norfolk County Registry of Deeds directly from New Century Mortgage Corporation on October 16, 2008, "the Defendant Trustee would have to provide executed writings from the named Grantors through all intermediary party(s)to the named Grantees under the requirements of the Defendant Trust's Governing Documents [PSA] to provide the Defendant Trustee with current  sufficient legal title to the

---

[57] "Like a sale of land itself, the assignment of mortgage is a conveyance of an interest in land that requires a writing signed by the grantor, See G.L. c. 183 § 3; Saint Patrick's Religious, Educ. & Charitable Ass'n v. Hale, 227 Mass. 175, 177, 116 N.E. 407 (1917), In a title theory state like Massachusetts a mortgage is a transfer of legal title to property to secure a debt, See Faneuil Investors Group, Ltd. Partnership v. Selectmen of Dennis, 458 Mass. 1, 6, 933 N.E. 2d 918 (2010)". *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 649 (2011).

[58] "Where, as here, mortgage loans are pooled together in a trust and converted into mortgage backed securities, the underlying promissory notes serve as financial instruments generating a potential income stream for investors, but the mortgages securing these notes are still legal title to someone's home or farm and must be treated as such" *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 649.

[59] "If the claimant acquired the note and mortgage from the original lender or from another party who acquired it from the original lender, the claimant can meet its burden through evidence that traces the loan from the original lender to the claimant. The key in either case is that the foreclosing entity must hold the mortgage at the time of the notice and sale in order accurately to identify itself as the present holder in the notice and in order to have the authority to foreclose under the power of sale (or the foreclosing entity must be one of the parties authorized to foreclose under G. L. c. 183, § 21, and G. L. c. 244, § 14).". *Ibanez* at page 651.

Juarez land, as "assignments of mortgage are transfers of an interest in land that travel independently of the note.[60]

133.    Defendant has failed to provide any evidentiary indicia that any of the above described actions mandated under the terms of the Trust's Governing Documents, and Massachusetts decisional case law, ever took place, and in fact has produced documentation which establishes that these required sales never took place at all.

134.    Thus, the Plaintiff does not make any claims under a contract theory to enforce the PSA, rather Juarez plausibly alleges that her mortgage contract is the only contract at issue before this court, and further plausibly alleges that due to the fact that the Defendant Trustee did not follow the Defendant Trust's Governing Documents with regards to the conveyance of its corpus, specifically the Juarez note and mortgage, to the Trust Fund, the Trust's interest in the enforcement rights to the Juarez note and mortgage has been vitiated.[61]

135.    Therefore, the Plaintiff's challenge is based only upon her mortgage contract, and the legal impossibility of the purported "assignment' of the Juarez mortgage that the Defendant trustee relies upon as it solitary indicia that it has the current standing as a purported assignee of contractual rights that the Plaintiff only granted to New Century Mortgage Corporation.

136.    The Defendant has not produced the original Juarez promissory note, nor any legally valid subsequent indorsement or negotiations of the same.

137.    The Defendant has not produced any purported "assignment" of the Plaintiff's mortgage that legally took place prior to the July 22, 2008 purported foreclosure auction sale of the Juarez residence.

138.    Thus, the Defendant did not have any current right and/or unified title to both the Juarez Note and mortgage at the time of the first publication of auction sale of the Juarez residence.

139.    Under historical case precedent in this Commonwealth, in order to enforce the harsh non-judicial power of sale in a

---

[60] "Where, as here, mortgage loans are pooled together in a trust and converted into mortgage backed securities, the underlying promissory notes serve as financial instruments generating a potential income stream for investors, but the mortgages securing these notes are still legal title to someone's home or farm and must be treated as such ."*U.S. Bank v. Ibanez*, 458 Mass. 637, 649

[61] Thus, the Plaintiff is clearly not making any claim to "enforce" the PSA.

mortgagor's mortgage contract, there must be unified title in both the borrower's note and mortgage at the time of the first publication of sale. *Eaton v. Federal National Mortgage Association* 462 *Mass*. 569 (2012).

140.    In *HSBC Bank, USA v. Paul Norris* 11-P-1916 (February 28, 2013), the Massachusetts Appeals Court issued an opinion stating that the prospective effect of Eaton would be abrogated to matters making the same argument regarding the necessity of the possession of the note by a foreclosing entity during the pendency of the Eaton matter.[62]

141.    The Plaintiff was very clearly advancing the same argument of the necessity of possession of her promissory note by the Defendants, in order to be a proper party to enforce the power of sale in her mortgage under G.L. c. 244 § 14, during the pendency of the *Eaton* matter.

142.    Therefore, under *Norris*, the prospective application of *Eaton* is <u>not</u> applicable to Juarez, and as such the Defendants' must also provide tangible evidentiary indicia, under proper evidentiary rules and foundation, that Defendant(s) are currently in possession of rights of "ownership" of rights to legally enforce the Juarez note.

143.    Defendant has never established under proper evidentiary rules, nor under the requirements attendant to the Uniform Commercial Code, which is codified in this Commonwealth under G.L. c. 106 §3, that it is currently cloaked with the current legal right and standing to enforce the Plaintiff's promissory note, or that it has unified title to both the Hayden's promissory note and its security instrument.

144.    Thus, Defendant(s) has not provided any indicia that it followed the requirements of G.L. c. 244 § 14 strictly, prior to July 22, 2008, as it has not identified the true "holder" of Plaintiff's mortgage, and thus the purported auction held by Defendant concluding in the sale of Plaintiff's residence is void.

145.    Therefore, based upon the entirety of the foregoing, the Plaintiff respectfully requests that this court make a finding through a Declaratory Judgment, that the Defendant Trustee never established its current legal standing to enforce the power of sale contained within the Juarez mortgage, under the strict requirements of G.L. c. 244 § 14.

**The Trustee's Purported Sale of The Juarez Residence to Christopher Fencer and Jacqueline Devoe.**

---

[62] Please see <u>Exhibit H</u>

146.    The Massachusetts Supreme Judicial Court has recently
found that where a purchaser, enters into a sale and
purchases a property from an entity [such as the Defendant
Trustee] that only claims title as a result of a defective
foreclosure auction sale, the said purchaser, purchased
nothing, as the preceding foreclosure auction sale that its
Grantor's title rests upon, was a nullity.[63]

147.    The Plaintiff has plausibly alleged that the Defendant
Trustee conducted the purported foreclosure auction sale on
July 22, 2008.

148.    The Plaintiff has plausibly alleged that the Defendant
Trustee did not receive the purported "assignment" of the
Plaintiff's mortgage until October 16, 2008.

149.    Based upon the foregoing, the term *Nemo dat quod non
habet,* applies to the Defendant Trustee's purported sale of
title to Christopher Fencer and Jacqueline Devoe, a title
that the Defendant Trustee did not own at the time of this
purported sale.

150.    The Plaintiff has further plausibly alleged that the
impact of the New Century Bankruptcy proceeding precludes the
Defendant Trustee from credibly alleging that any facet of
the purported "assignment" it seeks to rely upon is legally
viable to have legally conveyed the Juarez title.

151.    Based upon the Massachusetts Supreme Court holding in
*Bevilacqua v. Rodriguez*, Christopher Fencer and Jacqueline M.
Devoe purchased nothing from U.S. Bank National Association
as the Trustee for the Defendant Trust.

152.    Therefore, the current fact pattern before this Court
is clearly controlled by reference to *U.S. Nat'l Bank v.
Ibanez*, and *Bevilacqua v. Rodriguez*, as the Juarez factual
and legal issues are an exact mirror to these two
Massachusetts state law SJC precedents.

153.    As a result, Christopher Fencer and Jacqueline M. Devoe
have wrongfully and continuously, used and occupied the
Juarez residence to her detriment, during the period of such
occupancy, dominion and/or control over the said title and
occupancy of the Juarez' residence, subsequent to their
purported purchase from the Defendant Trustee.

154.    The said actions described in the preceding paragraph
by the Defendants, have clearly, directly, and proximately
caused the Plaintiff significant and enduring financial

---

[63] See *Bevilacqua v. Rodriguez*, 460 Mass. 762, 779 (2011),

damages as a result.

155.     As a further result Christopher Fencer and Jacqueline M. Devoe has slandered the title to the Juarez residence during the period of such occupancy, dominion and/or control over the said title and occupancy of the Juarez' residence, subsequent to their purported purchase from the Defendant Trustee.

## CLAIMS

## COUNT I

**Declaratory Judgment**
**That on July 22, 2008, Defendants Did Not Have Standing As A Real Party In Interest As The Owner of The Plaintiff's Promissory Note Under G.L. c. 106**

**As Against U.S. Bank, N.A. as Trustee, on behalf of the Defendant Trust, Select Portfolio Servicing and New Century Mortgage Corporation**

156.     Plaintiff repeats the allegations set forth in paragraphs above, as if fully set out herein.

157.     The Trust seeks to enforce the Plaintiff's promissory note, and as such is bound by the requirements of G.L. c. 106 §3.

158.     In order for Defendant(s) to claim it is the current "holder" (as that term is defined in G.L. c. 106 §1-201(20)) of the Plaintiff's promissory note, it must comply with the above mandates of the Uniform Commercial Code, codified in Massachusetts under G.L. c. 106, in that it must produce the physical instrument, and demonstrate that it received a proper negotiation from New Century, at a point in time when New Century was in bankruptcy.

159.     Additionally, as the Defendant trust, is a "securitized business trust", the conveyance of the Plaintiff's note and mortgage as part of the trust's corpus, must have taken place in compliance with the Plaintiff trust's governing instruments, the pooling and servicing agreement ("PSA"). See generally *Hecht v. Malley*, 265 U.S. 144 (1923).

160.     Upon information and belief, it is impossible for Defendant(s) to comply with the mandates set forth in G.L. c. 106, in order for it to claim any colorable right to standing as a real party in interest to legally enforce the Plaintiff's note as a holder, as the securitization process of the Plaintiff's note has forever left the instrument unenforceable by the Trust or any other named or unnamed

Defendant.

161.    Upon information and belief, it is also impossible for Defendant(s) to comply with the mandates set forth in the Trust's own governing instruments, with regards to the conveyance of the Plaintiff's note and/or mortgage to the Trust.

162.    As the Plaintiff has not had the opportunity for an expert to review or properly examine the Plaintiff's physical note purportedly held by Defendant(s), Plaintiff hereby seeks to preserve his right to challenge the signatures on the instrument, under G.L. c. 106 § 3-308(a).

163.    The Plaintiff therefore respectfully states that as a result of the above, this court is now left with a proffer by Defendant of a copy of the Plaintiff's promissory note made specifically payable to New Century, not the Trust, or in blank, and therefore the Plaintiff respectfully requests that this court find that the Defendant(s) have not proffered sufficient evidence that they are the holder of the Plaintiff's promissory note under the requirements of G.L. c. 106.

164.    Therefore, the Plaintiff respectfully requests that this court make a finding that in fact that neither the Trust, or any other named Defendant in this action, possesses any colorable right to claim standing as a real party in interest to legally enforce the Plaintiff's promissory note.

<u>**COUNT II**</u>

**Declaratory Judgment**
**That on July 22, 2008, Defendants Did Not Have Standing As A Real**
**Party Interest To Enforce The Plaintiff's Security Instrument**
**(Mortgage Contract)**

**As Against U.S. Bank, N.A. as Trustee, on behalf of**
**the Defendant Trust, Select Portfolio Servicing and**
**New Century Mortgage Corporation**

165.    Plaintiff repeats the allegations set forth in paragraphs above, as if fully set out herein.

166.    The Defendant Trust is not the original mortgagee; therefore a proffer must be made indicating exactly how an "assignment" of the Plaintiff's mortgage was made to the Defendant Trust directly from New Century Mortgage Corporation on October 16, 2008.

167.    The Defendant Trustee seeks to rely solely upon the purported October 16, 2008 "assignment" of the Plaintiff's

mortgage it purportedly "received" directly from New Century Mortgage Corporation, a time when New Century Mortgage Corporation was clearly under the protection of Chapter 11 of the United States Bankruptcy Code, and also at a time when as a DIP, clearly New Century had completely divested the New Century Mortgage Corporation bankruptcy estate of the entirety of any owned mortgage loan and mortgage servicing.

168.     The Defendant Trust's Governing Instrument authorizes only one entity to convey the Plaintiff's note and mortgage to the Trust (Asset Backed Securities Corp., the Depositor), not New Century.

169.     Trust law is governed by state law, and as to the formation of the Defendant trust, and/or as to the conveyance of its underlying mortgage loan asset corpus, it would be governed by the controlling law as set forth under the controlling terms of the said Governing Document(s)

170.     The Defendant Trust's Governing Instrument authorizes that the conveyance of the trust corpus [including the Juarez loan] must be performed by a date certain (the Closing Date), and as the securities issued to investors are "asset-backed" the failure to do so permanently vitiates the Trust's claim to standing, as mortgage asset corpus conveyed to the Trust after this date certain is a "prohibited transaction".

171.     The Defendant Trust seeks to rely only upon the purported "assignment" of the Plaintiff's mortgage it purportedly "received" directly from New Century Mortgage Corporation after the Closing Date.

172.     The Trust's Governing Instrument(s), the Pooling and Servicing Agreement ("PSA") and/or Private Placement Memo ("PPM"), are not merely contractual agreements between the parties to this "securitization", rather it is the terms of the Trust which must be followed with regards to the conveyance of the Plaintiff's note and mortgage, in order for the Trust to validly claim standing as a real party in interest to enforce the Plaintiff's security instrument as a purported "assignee."[64]

173.     Under information and belief, the failure to convey the Debtor's note and mortgage to the trust by the Closing Date permanently vitiates the Trust's claim to standing, as anything conveyed to the Trust after this date certain is a "prohibited transaction".

174.     The above paragraphs specifically relate to the condition precedents necessary in the actual formation of the

---

[64] The Plaintiff will seek this (these) documents in discovery.

trust itself, and/or the Trustee's on behalf of the Trust's legal ability to assert legal dominion and control over the ownership of the right of enforcement of the Juarez note and mortgage.

175.     Massachusetts is a title theory jurisdiction; an assignment of mortgage is an assignment of an interest in land, which is subject to defeasance by the satisfaction of the underlying debt obligation, and therefore from Juarez' perspective, Massachusetts law would govern the transfer of the interest in her title to purported successive "assignees".

176.     Therefore, in the context of the issue presently before this Court, a Conflict of Law issues arises, whereby the formation of the Defendant trust itself would be governed by the law described under the Trust's Governing Document, however from Juarez' perspective the laws of Massachusetts would Govern the purported transfer of the title to her land to purported successive "assignees" of the said title.

## COUNT III

### Declaratory Judgment
### That Defendant(s) Purported July 22, 2008 Foreclosure Auction Sale of The Juarez Residence Was Void Ab Initio

### As Against U.S. Bank, N.A. as Trustee, on behalf of the Defendant Trust, Select Portfolio Servicing and New Century Mortgage Corporation

177.     Plaintiff repeats the allegations set forth in paragraphs above as if fully set out herein.

178.     Juarez' has standing to make such claim, as she plausibly alleges that she still retains her Massachusetts statutory right of redemption under G.L. c. 244 § 18, as the purported auction sale of her residence was void.

179.     In the foreclosure deed, intentionally caused to be recorded upon the Suffolk County Registry of Deeds at Book 441 page 126, specifically at page 128, one Dennis Cook, claiming to be "Vice President REO" for the Defendant Trustee on behalf of the Defendant Trust, states under oath in his "attested Affidavit", that the first date of publication of the Juarez property auction was July 01, 2008.

180.     On October 29, 2008, the Defendant Trustee on behalf of the Defendant Trust, caused to be recorded upon the Suffolk County Registry of Deeds, a purported 'assignment' purportedly "executed" on October 16, 2008, at Book 44186 Page 118, purporting to "assign" the Juarez mortgage (and

note) to the Defendant Trustee.

181.    Based upon the Trustee's own admissions in publically
recorded documents above, On July 01, 2008, the time of the
first publication of the Juarez' auction (indeed even at the
date of the auction itself), the Defendant Trustee was not in
possession of any assignment of the Juarez mortgage, or title
to her real property.

182.    Based upon the historical case law of the Commonwealth,
recently articulated in U.S. Bank Nat'l Ass'n v. Ibanez,
foreclosing entity that is not the original "lender" must be
in possession of the "assignment" of the borrower's mortgage
at the time of the first publication of auction under G.L. c.
244 § 14.

183.    Therefore, the Plaintiff respectfully requests that
thei Court make a declaratory judgment that, under
Massachusetts state law, G.L. c. 244 § 14, the Defendant
Trustee's purported July 22, 2008 foreclosure auction sale of
the Juarez real property was void ab initio.


## COUNT IV

### Declaratory Judgment
### That Defendant Trustee's Purported October 29, 2008 Sale of The
### Juarez Residence To Christopher Fencer and Jacqueline M. Devoe
### Was Void Ab Intio

### As Against Christopher Fencer and Jacqueline M. Fencer,
### f/k/a Jacqueline M. Devoe

184.    Plaintiff repeats the allegations set forth in
paragraphs above, as if fully set out herein.

185.    Based upon the above paragraphs, and the holding in
*Bevilacqua v. Rodriguez*, Juarez has plausibly alleged that
the Defendant Trustee's attempted subsequent purported sale
of the Juarez real property was therefore also legally
ineffective to Christopher Fencer, and was also therefore
void.

186.    Based upon the foregoing the Plaintiff respectfully
requests that this Court make a declaratory judgment that the
Defendant Trustee's Purported October 22, 2008 Sale of The
Juarez Residence To Christopher Fencer and Jacqueline M.
Devoe was void ab intio

187.    Based upon the foregoing, the Plaintiff respectfully
requests that this court make a declaratory judgment that, in

31

fact, Christopher Fencer, Jacqueline M. Fencer, f/k/a
Jacqueline M. Devoe, lacks any indicia of possessing any
colorable right of standing to claim current title to the
Juarez real property located at 68 ½ Chickatawbut Street,
Dorchester, Massachusetts.


## COUNT V

### Declaratory Judgment
### That The Title and Possession to 68 ½ Chickatawbut Street,
### Dorchester Massachusetts Be Returned to the Plaintiff

### As Against All Defendants

188.    Plaintiff repeats the allegations set forth in
paragraphs above, as if fully set out herein.

189.    Based upon the foregoing paragraphs, the Plaintiff
respectfully requests that this Court issue a declaratory
judgment that title to 68 ½ Chicktawbut Street, Dorchester,
Massachusetts, be returned in her name.

190.    Based upon the above paragraphs, therefore the
Plaintiff additionally requests that this Court issue a
declaratory judgment that the Plaintiff be returned in
possession of the said premises.

## COUNT VI

### Use and Occupancy

### As Against Christopher Fencer and Jacqueline M. Fencer,
### f/k/a Jacqueline M. Devoe

191.    Plaintiff repeats the allegations set forth in
paragraphs above, as if fully set out herein.

192.    Based upon the foregoing paragraphs, the Plaintiff
states that Christopher Fencer and Jacqueline M. Fencer,
f/k/a Jacqueline M. Devoe have asserted wrongful dominion and
control over the title to 68 ½ Chicktawbut Street,
Dorchester, Massachusetts.

193.    Based upon the above, the Plaintiff has suffered
financial damages through the wrongful loss of title to her
real property described in the above paragraph, including but
not limited to the Defendants Christopher Fencer and
Jacqueline M. Fencer, f/k/a Jacqueline M. Devoe, wrongful use
and occupation of the above described premises.

194.    The Plaintiff seeks all financial damages related to
the Defendants Christopher Fencer and Jacqueline M. Fencer,
f/k/a Jacqueline M. Devoe, wrongful dominion, control, use &

occupancy of 68 ½ Chickatawbut Street, Dorchester,
Massachusetts.

195.     Plaintiff will prove damages at trial.

<u>COUNT VII</u>

**Slander of Title**

**As Against Christopher Fencer and Jacqueline M. Fencer,
f/k/a Jacqueline M. Devoe**

196.     Plaintiff repeats the allegations set forth in
paragraphs above, as if fully set out herein.

197.     Based upon the foregoing paragraphs, the Plaintiff
states that Christopher Fencer and Jacqueline M. Fencer,
f/k/a Jacqueline M. Devoe have asserted wrongful dominion and
control over the title to 68 ½ Chicktawbut Street,
Dorchester, Massachusetts.

198.     Based upon the above, the Plaintiff has suffered
financial damages through the wrongful loss of title to her
real property described in the above paragraph, including but
not limited to the Defendants Christopher Fencer and
Jacqueline M. Fencer, f/k/a Jacqueline M. Devoe, wrongful and
continuous outward appearance and publication of the wrongful
dominion and control over the title to the above described
premises.

199.     "Slander of title" is a tort action for damage to real
property  resulting from interference with title to real
estate by falsehoods which although not personally
defamatory, cause the Plaintiff pecuniary loss through
interference with dominion over his property" *Salloom  v.
Lister* 2004 WL 1836027, 18 Mass L. Rptr. 165 at *2 (Mass
Super. 2004).

200.     "In Massachusetts, a person is liable for slander of
title, i.e. injurious falsehood", if he or she (a) publishes
a false statement, (b) that harms the interests of another;
(c) with the intent to harm the interests of another or
"either recognizes or should recognize that it is likely to
do so, an (d) knows that the statement is false or acts in
reckless disregard of its truth or falsity". *Dulgarian v.
Stone*, 652 N.E. 2d 603, 609 (Mass. 1995).

201.     (a) <u>Publication of false statement</u>. Here it is
unquestioned that the Defendant has caused a false
publication to be publically recorded at the Suffolk County
Registry of Deeds that purports to state that Defendant
Christopher Fencer and Jacqueline M. Fencer, f/k/a Jacqueline

M. Devoe currently have absolute ownership of the title to Plaintiff's residence.

202.     (b) <u>Harm to Plaintiff</u>. It is unquestioned that Defendants publication of  the false assertion that it is the current title holder of the Plaintiff's residence, has caused significant financial harm to the Plaintiff, by estopping Plaintiff enjoying her legal rights of use an enjoyment of real property that she still legally possesses.

203.     (c) <u>Intent of Defendant to Harm Plaintiff</u>. It is unquestioned that the Defendant intended or should have known, of the harm to the legal interest of Plaintiff through their false publication of a legally ineffective Quit Claim.

204.     (d) <u>Scienter of Defendant of the wrongfulness of its actions</u>. Defendants continue to act in reckless disregard despite the fact that it would have constructive of the falsity of said false publications on the Suffolk County Registry of Deeds, and would also have constructive scienter scienter that the previous auction sale was defective, based upon recent Massachusetts case law interpretation of this precise issue.

205.     Thus, based upon the above numbered paragraphs, Plaintiff has succinctly set out, and successfully pled, the specific acts by Defendant which meet the foundational elemental requirements to establish the tort of Slander of her Title by Defendants.

206.     Plaintiff seeks all damages allowable in tort, or otherwise allowable by this court, for these transgressions by the Defendant.

207.     The Plaintiff seeks all financial damages related to the Defendants Christopher Fencer and Jacqueline M. Fencer, f/k/a Jacqueline M. Devoe, wrongful dominion, control, use & occupancy of 68 ½ Chicktawbut Street, Dorchester, Massachusetts.

208.     Plaintiff will prove damages at trial.


## COUNT VIII

### Violation of Chapter 93A and
### Its Implementing Regulations

**As Against U.S. Bank, N.A. as Trustee, on behalf of the Defendant Trust, Select Portfolio Servicing and New Century Mortgage Corporation**

209.     Plaintiff repeats and realleges all paragraphs above as
if set forth fully herein.

210.     Plaintiff has met all statutory prerequisites for
making allegations against Defendants Select Portfolio
Servicng, and The Defendant Truteee, as well as the Defendant
Trust, and its Certificateholders beneficial owners.

211.     Defendant Select Portfolio Servicing responded to
Plaintiff's G.L. c. 93A Demand letter on November 23, 2010. A
true and accurate copy of the Defendant SPS letter is
attached hereto at <u>Exhibit G</u>

212.     Defendant SPS, clearly refused to make any reasonable
offer of settlement to Plaintiff.

213.     The Defendant Trustee failed to make any response to
the Plaintiff's Demand letter.

214.     At all times relevant to this Complaint, Defendants
were engaged in trade or commerce within this Commonwealth,
within the meaning of G.L. c. 93A.

215.     Defendants acts and conduct, as described in the above
preceding paragraphs constitute unfair and deceptive acts and
practices in the conduct of trade or commerce in violation of
G.L. c. 93A, § 9.

216.     The Defendants specific conduct was deceptive relative
to its wrongful, and intentional acts that created the
appearance of legal ownership over the title to the Juarez
real property, sufficient to conduct the purported July 22,
2008 foreclosure auction sale, and further convey such
wrongful possession of title to Christopher Fencer and
Jacqueline M. Fencer-Devoe, that include, but are not limited
to:

    a. Intentionally creating a legal document purporting that
       on SPS acting as a purported "attorney in fact" for New
       Century executed a purported direct assignment of the
       Juarez mortgage to the Defendant Trustee on October 16,
       2008, when such "assignment" was a legal impossibility.

    b. Intentionally placing a "stamped date" of June 13, 2007,
       at the top of the legally ineffective purported October
       16, 2008 "assignment", demonstrating its scienter of the
       legal ineffectiveness of the October 16, 2008 execution,
       in order to deceive the Plaintiff through this
       intentional misrepresentation, which Plaintiff
       materially relied upon to her detriment.

    c. Intentionally causing a publication of the above legally
       ineffective document upon the Suffolk County Registry of

Deeds, with scienter of its falsity, and scienter of its misrepresentations otherwise.

d. Intentionally conducting the purported July 22, 2008 foreclosure auction sale, despite scienter of the legal impossibility of the Defendant Trustee to conduct such auction under G.L. c. 244 § 14.

e. Intentionally causing to be recorded upon the Plaintiff's title to her real property a purported "foreclosure deed", with scienter of the falsity nof such document.

f. Intentionally further creating the appearance of a third party sale of the Juarez residence to Christopher Fencer and Jacqueline M. Fencer, f/k/a Jacqueline M. Devoe, with scienter, or reason to know of such wrongfulness, of the legal ineffectiveness of the Defendant Trustee's claim to title to 68 ½ Chickatawbut Street, Dorchester, Massachusetts.

217.    Defendants' acts and conduct in the preceding paragraphs constitute unfair and deceptive acts and practices in the conduct of trade or commerce in violation of G.L. c. 93A § 9.

218.    Defendants' wrongful acts occurred primarily and substantially within this Commonwealth, and were conducted knowingly, willingly, and with full scienter, or reason to know thereof.

219.    As a consequence of the above actions, the Plaintiff has suffered significant, and enduring, financial damages as a result of the Defendants willfully deceptive conduct.

220.    The Plaintiff will prove such damages at trial.

**COUNT IX**

**Civil Conspiracy**

**As Against U.S. Bank, N.A. as Trustee, on behalf of the Defendant Trust, Select Portfolio Servicing and New Century Mortgage Corporation**

221.    Plaintiff realleges all prior above as if set out here in full

222.    Massachusetts recognizes two types of Civil Conspiracy.

223.    The first type is commonly known as 'true conspiracy', which occurs when the conspirators, acting in unison, exercise a peculiar power of coercion over the Plaintiff that they would not have had they acted alone" See Metro. Prop. And Cas. Ins. Co. v. Boston Regional Physical Therapy, Inc. F. Supp. 2d 199, 202 (D. Mass. 2008).

224.    The second form of conspiracy recognized in Massachusetts is the tort-based civil conspiracy is more akin to a theory of common law joint liability in tort ... Id.

225.    For liability to attach with respect to the second form of conspiracy there must be an agreement between two or more people to do a wrongful act and proof of some tortuous act in furtherance of the agreement. Id.

226.    This second type of civil conspiracy derives from concerted action, 'whereby liability is imposed on one individual for the tort of another." *Kurker v. Hill*, 689 N.E.2d 833, 836 (Mass App. Ct. 1998 (Citing *Aetna*, 43 F.3d at 1564).

227.    By acting in unison, Defendants exercised a peculiar power of coercion over Plaintiff, in that SPS and LPS, on behalf of the Defendant Trust, prepared and filed all relevant documents with reference to the attempted wrongful foreclosure of the Plaintiff's mortgage, something that the other Defendants could not have accomplished on their own.

228.    New Century Mortgage Corporation willfully induced Plaintiff to undertake the mortgage loan in question based solely upon the liquidation value of Plaintiff's residence, something the other Defendants could not have accomplished on their own.

229.    Defendant SPS purportedly billed and serviced, and accepted payments for Plaintiff's loan on behalf of entity(s) that has/have no legal right to any claim of ownership of Plaintiff's loan, something the other Defendants could not have accomplished on their own.

230.    Therefore Defendant(s) meet the requirements to establish the first type of conspiracy recognized in the Commonwealth.

231.    With regards to the second type of civil conspiracy recognized in Massachusetts, the actions of Defendant(s) also appear to imply they acted in concert to induce Plaintiff to

enter into the mortgage loan transaction with scienter that it would default.

232.    All Defendants have acted in concert to seek wrongful collection on a mortgage loan that is not owned by any of the Defendants.

233.    There was an agreement between at least 2 parties (some undisclosed) to perform an act that is at least *malum prohibitum*, if not *malum in se*, and the tortuous act would be the wrongful collection, and conversion of, Plaintiff's monthly mortgage payments, and the current foreclosure action, based upon the fact that all parties acted with scienter that Defendants lack standing to claim any ownership of Plaintiff's note, or mortgage, and therefore lacked the legal right to foreclose.

234.    The affirmative steps in the furtherance of the conspiracy were

a. SPS's wrongful collection of Plaintiff's monthly mortgage payments (in which this entity was paid handsomely in fees that were extracted from Plaintiff's monthly payments).

b. SPS, willful creation, and execution of legally deficient documents (such as the fatally defective purported "assignment" of the Plaintiff's mortgage, in order to deceive the public and the judiciary, and to purposely mask the dire gaps in title to the Plaintiff's note and mortgage.

c. the purported U.S. Bank as Trustee's purported wrongful receipt of Plaintiff's monthly payments on behalf of the Trust,

d. SPS and the Defendant Trustee's failure to account for their indemnification for any purported money(s) due and owning for the Defendants claim regarding any "obligation" through receipt of "mortgage pool" and or "Certificate Insurance".

e. All of these actions were undertaken, when Defendants own evidence appears to establish that it is factually and theoretically impossible for any of the Defendants to ever claim ownership to the Plaintiff's note or mortgage.

235.    Liability should be imposed on all Defendants for the torts perpetrated by each.

236.    Therefore, the requirements for the second type of civil conspiracy recognized in Massachusetts have been met

38

as well.

237.     Plaintiff will prove damages at trial.


## COUNT X

### Fraud

### As Against U.S. Bank, N.A. as Trustee, on behalf of the Defendant Trust, Select Portfolio Servicing and New Century Mortgage Corporation

238.     Plaintiff realleges all prior above as if set out here in full.

239.     To state a claim for fraud, "a plaintiff must allege that (1) the defendant made a false representation of material fact, (2) with knowledge of its falsity, (3) for the purpose of inducing the plaintiff to act in reliance thereon, (4) the plaintiff relied upon the representation, and (5) the plaintiff acted to his detriment." *Smith v. Jenkins*, 626 F. Supp. 2d 155, 164-165 (D. Mass. 2009) (citations omitted)

240.     (1) Defendants' false representations of material fact include but are not limited to the following:

   a. Intentionally creating a legal document purporting that on SPS acting as a purported "attorney in fact" for New Century executed a purported direct assignment of the Juarez mortgage to the Defendant Trustee on October 16, 2008, when such "assignment" was a legal impossibility.

   b. Intentionally placing a "stamped date" of June 13, 2007, at the top of the legally ineffective purported October 16, 2008 "assignment", demonstrating its scienter of the legal ineffectiveness of the October 16, 2008 execution, in order to deceive the Plaintiff through this intentional misrepresentation, which Plaintiff materially relied upon to her detriment.

   c. Intentionally causing a publication of the above legally ineffective document upon the Suffolk County Registry of Deeds, with scienter of its falsity, and scienter of its misrepresentations otherwise.

   d. Intentionally conducting the purported July 22, 2008 foreclosure auction sale, despite scienter of the legal impossibility of the Defendant Trustee to conduct such auction under G.L. c. 244 § 14.

e. Intentionally causing to be recorded upon the
   Plaintiff's title to her real property a purported
   "foreclosure deed", with scienter of the falsity nof
   such document.

f. Intentionally further creating the appearance of a third
   party sale of the Juarez residence to Christopher Fencer
   and Jacqueline M. Fencer, f/k/a Jacqueline M. Devoe,
   with scienter, or reason to know of such wrongfulness,
   of the legal ineffectiveness of the Defendant Trustee's
   claim to title to 68 ½ Chickatawbut Street, Dorchester,
   Massachusetts.

241. (2) Defendants' knowledge of the falsity of its
     representations;

a. Defendants had scienter that on October 16, 2008, it was
   legally impossible for SPS to act as "attorney in fact"
   for New Century, where the DIP had clearly divested
   itself of ALL mortgage assets, as well as all mortgage
   servicing as of June 29, 2007.

b. Defendants scienter is evidenced by its attempt to rely
   upon a mere "printing of June 13, 2007" at the top of
   the purported legally impossible "assignment".

c. Defendants willfully, continuously, and vigorously
   advanced the theory that their was an earlier June 13,
   2007 "assignment", and that this "printed date" sufficed
   as proper evidentiary indicia of such purported earlier
   assignment, at a time when Defendants had reason to know
   that such theory was soundly rejected by the
   Massachusetts Supreme Judicial Court, in *U.S. Nat'l Bank
   v. Ibanez*, 458 Mass. 637 (2011).

d. Defendants had further knowledge of the falsity of the
   documents and actions that are described above at § 222,
   (c), (d), (e), and (f).

242. (3) The Defendants' created the appearance of a valid
     purported assignment, in order for Plaintiff to act in
     reliance thereon, so that she would not contest the clearly
     wrongful purported July 22, 2008 foreclosure auction sale.

243. (4) and (5); the Plaintiff relied upon the above
     intentional misrepresentations by the Defendants to her
     detriment.

244. Thus, the Plaintiff has plausibly pled "the who, what,
     where, and when of the allegedly false or fraudulent
     representation." *Smith v. Jenkins*, 626 F. Supp. 2d at 165
     (citing *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*,

40

374 F.3d 23, 29 (1st Cir. 2004)).

245. The Plaintiff has also plausibly pled with particularity, and clearly identified, the circumstances constituting the alleged fraud by Defendants, as required under Fed. R. Civ. P. 9(b).

246. Therefore the Plaintiff has plausibly alleged her fraud Count as against the named Defendants.

247. The Plaintiff seeks all allowable damages for the Defendants actions and transgressions.

248. Plaintiff will prove her damages at trial.


   **WHEREFORE,** Plaintiff respectfully requests this court to provide the requested legal and equitable relief described in the above paragraphs, and any other such relief this court deems as just and proper, including but not limited to:


   a. All other legal and equitable claims, or otherwise made in the above paragraphs

   b. All of Plaintiff's reasonable attorney fees, and attendant costs with defending the Defendant(s) legally deficient
   proof of claim in this matter.

   c. All other equitable and legal remedies that this court deem just and proper.


                    Respectfully submitted,
                    Plaintiff,
                    By her Attorney,



                    /s/Glenn F. Russell, Jr
                    Glenn F. Russell, Jr.
                    BBO# 656914
                    38 Rock Street, Suite #12
                    Fall River, MA 02720
                    (508) 324-4545
                    russ45esq@gmail.com

Dated: April 30, 2012
                         41

**CERTIFICATE OF SERVICE**

I, Glenn F. Russell, Jr., do hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF), upon the following this is the 30th day of April, 2013. I further certify that upon issuance of Summons in this matter, formal process of service will be caused to be served upon the newly Joined Defendants in this matter, by way of process server and/or constable.:

                                          /s/*Glenn F. Russell, Jr*

U.S. Bank, N.A. as Trustee
on behalf of the Holders OF
The Asset Backed Securities
Corporation Home Equity Loan
Trust Series, NC 2005-HE8,
Asset Backed Pass-Through
Certificates, Series NC
2005-HE8, and
Select Portfolio Servicing, Inc.

Peter T. Carr
Charlotte L. Bednar
Eckert Seamans
Cherin, & Mellot, LLC
Two International Place, 16th Fl
Boston, MA 02110-2602

## VERIFICATION

I, Melissa A. Juarez, being duly sworn, depose and state that I have read a copy of this Verified Complaint, and that I have further read the facts and statements contained herein, and I hereby attest that the facts and statements contained in this Complaint are true to the best of my knowledge and belief, and that I have not omitted any material facts herein, on this the 30th day of April, 2013.


_____
Melissa A. Juarez