UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MELISSA A. JUAREZ, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )   Civil Action No. 11-10318-DJC |
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, et al., | ) ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                       **March 1, 2014**

**I.   Introduction**

Plaintiff Melissa Juarez ("Juarez") has filed this lawsuit against the Defendants in connection with the foreclosure of her residence. Defendants U.S. Bank National Association ("U.S. Bank") and Select Portfolio Servicing, Inc. ("SPS") (collectively, the "Defendants") have moved to strike Juarez's second amended complaint, D. 43, and dismiss certain of the claims in the amended pleading, namely the fraud and M.G.L. c. 93A claims, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, D. 44. For the reasons stated below, the Court DENIES Defendants' motion to strike, REMANDS this action to state court and DENIES the motion to dismiss as moot.

**II.   Factual Background and Procedural History**

The Court has previously summarized the facts of this case. See Juarez v. U.S. Bank Nat. Ass'n ex rel. Holders of the Asset Backed Sec. Corp. Home Equity Loan Trust, Series NC

2005-HE8, No. 11-10318-DJC, 2011 WL 5330465, at *1-2 (D. Mass. Nov. 4, 2011) ("Juarez I"). Although Juarez has filed a second amended complaint since the Court initially heard the parties, the thrust of her allegations remain the same. Compare id. with Second Am. Compl., D. 42; see also Juarez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 271-74 (1st Cir. 2013) ("Juarez II"). In short, Juarez alleges that at the time U.S. Bank initiated foreclosure proceedings against her in 2008, U.S. Bank was not the holder of Juarez's mortgage because it neither was the original mortgagee of Juarez's mortgage nor possessed a valid assignment of mortgage. D. 42 ¶ 181. In addition, Juarez alleges that after her property was sold at auction, id. ¶ 20, Christopher and Jacqueline Fencer (the "Fencers") purchased the property on October 29, 2008. Id. ¶¶ 25, 28.

On October 29, 2010, proceeding *pro se*, Juarez filed a complaint in Suffolk Superior Court against U.S. Bank and SPS alleging fraud and violations of Massachusetts foreclosure statutes. D. 9 at 8-22. On January 24, 2011, Juarez filed an amended complaint, alleging fraud (Count I), violations of Massachusetts foreclosure statutes, Mass. Gen. L. c. 244, § 14 (Count II); Mass. Gen. L. c. 244, § 2 (Count III), as well as violations of Mass. Gen. L. c. 93A (Count IV). D. 9 at 61-80. Juarez also sought to invalidate the foreclosure sale, restore her status as the rightful legal owner of the Property, determine that the Defendants were not the legal owners of the Mortgage and Note at the time of foreclosure and obtain a court order allowing Juarez to move back into the Property or alternatively to sell it. D. 9 at 21.

On February 24, 2011, U.S. Bank and SPS removed this action to this Court. D. 1. Juarez moved to remand this case to state court on March 11, 2011. D. 4. The Court denied that motion. May 6, 2011 docket entry. U.S. Bank and SPS moved to dismiss the amended complaint. D. 10. After U.S. Bank and SPS filed this motion, but before the Court heard

argument, Juarez retained counsel.  D. 20.  After hearing the parties, the Court dismissed the amended complaint.  D. 30; D. 31.  The First Circuit reversed this Court's decision, ruling, in relevant part, that:

- Juarez stated a claim for wrongful disclosure under Mass. Gen. L. c. 244, § 14;

- Juarez failed to state a claim under Mass. Gen. L. § 244, § 2;

- Juarez failed to plead fraud and unfair and deceptive acts or practices (Mass. Gen. L. c. 93A) with sufficient particularity to pass muster under Rule 9(b); and

- Juarez should be allowed to amend her complaint to re-plead her fraud and c. 93A claims.

Juarez II, 708 F.3d at 271, 280-82.  After the First Circuit remanded the case to this Court, Juarez filed her second amended complaint.  D. 42.  In addition to amending her fraud and c. 93A claims, Juarez added four new counts for declaratory judgments against Defendants, including a civil conspiracy claim against U.S. Bank, SPS and New Century and, for the first time, asserting claims against the Fencers for a declaratory judgment, use and occupancy and slander of title.  Id. ¶¶ 184-208; 221-237.  Defendants moved to strike this complaint and dismiss Juarez's fraud and c. 93A claims.  D. 43, 44.

### III.  Discussion

#### A.  Standard of Review

##### 1.  *Motion to Amend*

The Court understands Defendants' motion to strike as an objection to the nature of Juarez's amendment to her complaint.  D. 43 at 1.  Defendants argue that Juarez's amendment "far exceeds" the scope of the amendment envisioned by the First Circuit.  Id.  The Court, however, treats Juarez's second amended complaint as a motion for leave to amend her

complaint.

Courts should grant leave to amend "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend may be denied for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). Courts grant *pro se* litigants wide latitude in amending their complaints. Alexander v. Jeffries, No. 93-15830, 1993 WL 503234, at *1 (9th Cir. Dec. 8, 1993) (noting that a "pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment"). This latitude extends to litigants who have retained counsel since filing their initial complaint. Echevarria v. Puerto Rico Dep't of Corr., No. 07-2134(JAF), 2009 WL 349560, at *1 (D.P.R. Feb. 9, 2009) (discussing court's prior grant of further "leave to amend [plaintiffs'] original, pro se complaint because Plaintiffs had since retained counsel"). Where amendments add new defendants and where such amendments will disrupt litigation only in a "relatively insignificant" manner, "the new parties should be joined so as to resolve the entire dispute." Pray v. SMPO Properties, Inc., 746 F. Supp. 2d 317, 324 (D. Mass. 2010). Where the joinder of new defendants destroys complete diversity, however, courts look to Rule 15 in concert with 28 U.S.C. § 1447(e), which permits courts to "deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e) (2012). Under these circumstances, "where adding a defendant will destroy diversity jurisdiction, the motion for leave to amend must be given greater scrutiny." Espat v. Espat, 56 F. Supp. 2d 1377, 1382 (M.D. Fla. 1999) (citing Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987)).

**B.     As Juarez States Plausible Claims Against the Fencers, Leave to Amend Is in The Interests of Justice**

*1.     Juarez's Claims against the Fencers are Plausible*

As part of the Court's determination as to whether justice requires allowing Juarez leave to amend to add claims against the Fencers, it must determine whether her new claims are plausible. The First Circuit has "emphasize[d] that the complaint must be read as a whole," and that circumstantial evidence may be sufficient to surpass the plausibility threshold. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). The claim should move forward if the complaint "create[s] a reasonable expectation that discovery may yield evidence" of the defendant's liability. Id.. Dismissal is appropriate only if Juarez's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted). Courts deny plaintiffs leave to amend where amendment would be futile. McGee v. Benjamin, No. 08-11818-DPW, 2012 WL 959377, at *11-12 (D. Mass. Mar. 20, 2012) (citing Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001)). As discussed below, however, amendment is not futile in this case.

Juarez's wrongful foreclosure claims against U.S. Bank and SPS are of the sort that has been the subject of extensive appellate litigation in Massachusetts over the past few years. In that time, the Massachusetts Supreme Judicial Court has decided three opinions in this area, which have provided significant guidance to trial courts. The first two of these opinions, U.S. Bank, N.A. v. Ibañez, 458 Mass. 637 (2011) and Bevilacqua v. Rodriguez, 460 Mass. 767 (2011), are directly at issue in this case. In Ibañez, the Supreme Judicial Court held that under

Mass. Gen. L. c. 244, § 14, a foreclosing entity claiming to be an assignee of the mortgage must hold the mortgage at the time of the notice of sale and foreclosure sale. Id. at 655. The Court explained that a foreclosing entity need not have recorded an assignment at the time of the notice of sale so long as the assignment is otherwise valid since "[a] valid assignment of a mortgage gives the holder of that mortgage the statutory power to sell after a default regardless whether the assignment has been recorded." Ibañez, 458 Mass. at 654 (citing Mass. Gen. L. c. 183 § 21; MacFarlane v. Thompson, 241 Mass. 486, 489 (1922)). If the foreclosing entity had not recorded a valid assignment prior to the foreclosure, "a written assignment executed after foreclosure" confirming the assignment may be properly recorded. Ibañez, 458 Mass. at 654 (emphasis added). Nevertheless, such "confirmatory assignment," "cannot confirm an assignment that was not validly made earlier or backdate an assignment being made for the first time." Id. (citing Scaplen v. Blanchard, 187 Mass. 73, 76 (1904)). Where the foreclosing party obtains an assignment of mortgage after it has published the notice of sale, the foreclosure is void, as such a foreclosing entity was not the holder of the mortgage at the time of foreclosure. Id. at 648; see also Mass. Gen. L. c. 244, § 14.

In Bevilacqua, the Supreme Judicial Court answered the question left unanswered by Ibañez: what happens when a third party purchases Ibañez-affected property? The answer: the purchaser likely holds no record title to the property. 460 Mass. at 773. Moreover, because a property's chain-of-title is a matter of public record, a purchaser of Ibañez-affected property likely does not stand in the shoes of a "bona fide purchaser for value," to whom "[t]he law goes a great way in protecting the title of a purchaser for value without notice or knowledge of any

defect in the power of the vendor to sell . . . ." Id. at 777 (quoting Rogers v. Barnes, 169 Mass. 179, 183 (1897)).

The third of this trio of cases is Eaton v. Fed. Nat'l Mortg. Ass'n, 462 Mass. 569 (2012), which is not at issue here. The Supreme Judicial Court in Eaton held that a foreclosing party must hold both the mortgage and the underlying promissory note at the time of foreclosure. Id. at 584-86.

Here, the First Circuit has already determined that Juarez has plausibly alleged that the foreclosure on the Property was an Ibañez violation. Juarez II, 708 F.3d at 279 (holding that Defendants' failure to produce document demonstrating pre-foreclosure assignment giving U.S. Bank the right to foreclose precluded finding that Juarez had not alleged a plausible claim under Mass. Gen. L. c. 244, § 14). Juarez has further alleged that the Fencers purchased the property at issue after foreclosure proceedings completed. D. 42 ¶¶ 25, 28. She has, therefore, plausibly alleged that the Fencers sit in the same shoes as the plaintiff in Bevilacqua, in that the Fencers are third-party purchasers of alleged Ibañez-affected property. Accordingly, Juarez's claim for a declaratory judgment against the Fencers (Count IV, which appears to rely on § 14 as basis for liability), her claim for title and possession against all defendants (Count V), her claim use and occupancy against the Fencers (Count VI) and her claim for slander of title against the Fencers (Count VII) are plausible. Leave to amend is, therefore, not futile.

    2.  *Failure to Join the Fencers Would Be Prejudicial to Them*

Juarez argues that the failure to join the Fencers would likely result in the "reanimat[ion]" of Defendants' previous motion for failure to join necessary and indispensible

parties.[1]  D. 45 at 7 (citing Juarez II, 708 F.3d at 273 n.4 (noting that Defendants argued before this Court that "the current owners of the foreclosed property were both necessary and indispensible parties")); see also D. 11 at 4-5.  Putting aside whether judicial estoppel bars the Defendants from arguing that the Court should not join the Fencers in this litigation, the Court nonetheless agrees with the position that now both parties have taken at various points during the course of this litigation.  That is, the Court concurs that the Fencers are indispensible parties under Fed. R. Civ. P. 19 to this litigation.

That Fencers are "indispensable parties" under Fed. R. Civ. P. 19(b) where they are current owners of the property in question and, as such, any disposition of this matter may prejudice their ability to protect their interests.  See, e.g., Katz v. Denn, No. 05-40014-FDS, 2007 WL 763896, at *5 (D. Mass. March 12, 2007).  The Defendants acknowledged as much in an earlier submission to this Court:

> It is well settled in Massachusetts law that a person with an interest in land "ordinarily should be joined if a judgment could affect that interest." Kitras v. Town of Aquinnah, 64 Mass. App. Ct. 285, 290 833 N.E.2d 157, 163 (2005).  In an action to redeem brought after a foreclosure sale, the purchaser at the foreclosure sale is a necessary party. Aurea Aspasia Corp. v. Crosby, 331 Mass. 515, 518, 120 N.E.2d 759, 761 (Mass. 1954).  See also Marvel v. Cobb, 200 Mass. 293, 86 N.E. 360 (Mass. 1908). Here, the Complaint seeks to not only set aside the foreclosure sale, but also to set aside the subsequent sale to the [Fencers], who have owned and resided at the Property for over two years. The Court, in equity and good conscience, cannot impair the rights of the [Fencers] without the opportunity to defend their rights to the Property.

D. 11 at 4-5.  Put another way, should Juarez succeed on her claim under Mass. Gen. L. c. 244, § 14, the Fencers will be put in the unenviable position of being a third party purchaser of

---

[1] In its prior decision, the Court determined that it did not need to reach the issue of whether the Fencers were indispensible because it dismissed the complaint on the merits. Juarez I, 2011 WL 5330465 at *10 n.12.

Ibañez-affected property. That is, a finding in favor of Juarez could mean that the Fencers do not hold record title to the property.[2] See Bevilacqua, 460 Mass. at 779 (quoting Demoulas v. Demoulas, 428 Mass. 555, 577, 703 N.E.2d 1149 (1998)) (noting that third party purchasers of real property that was the subject of unlawful foreclosures "may not establish themselves as bona fide purchasers simply by claiming they were 'blissfully unaware' of facts to which they closed their eyes" and are held to have actual or constructive notice of defects in title). Under these circumstances, the Court cannot "in equity and good conscience," Fed. R. Civ. P. 19(b); D. 11 at 5, deprive the Fencers of the opportunity to represent their interests prior to judgment in this matter, particularly when there do not appear to be measures by which the potential prejudice to their interests could be lessened in their absence. Fed. R. Civ. P. 19(b)(2).[3]

    3. *Defendants Have Not Demonstrated that Juarez Has Acted in Bad Faith*

---

[2] One commentator summarized the problems associated with Bevilacqua: "The court just said you might be able to go back and re-foreclose (on the property) and prove title, but you do not have clear title now . . . . The issue for a homeowner has to prove that a foreclosing entity had the right to foreclose. But if I am someone who has bought a foreclosure, I now cannot sell my home until I can prove that the foreclosing entity had that right of foreclosure, which might be difficult for me to prove." David E. Woolley & Lisa D. Herzog, Mers: The Unreported Effects of Lost Chain of Title on Real Property Owners, 8 Hastings Bus. L.J. 365, 387 (2012) (quoting Kerri Panchuk, Buyer of Invalid Foreclosure Loses Appeal to Clear Property Title, Housing Wire, Oct. 18, 2011, http://www.housingwire.com/articles/buyer-invalid-foreclosure-loses-appeal-clear-property-title).

[3] Defendants assert that "third party purchasers are not necessary and indispensable parties." D. 52 at 4. The cases Defendants cite, however, do not speak directly to this proposition and the Court finds cases law concluding to the contrary more persuasive. See, e.g., Katz, 2007 WL 763896, at *5 (concluding that "[t]here can be no doubt that the current titleholder has an interest in the subject of this action-that is, whether the property is subject to the Commissioner's claimed mortgage interest-and disposition of this case in the owner's absence threatens to impair his or her ability to protect that interest. Moreover, the factors set forth in Rule 19(b) suggest that the new owner is also 'indispensable" to this action"). Moreover, cases outside of the context of mortgage and foreclosure cases have also suggested to the contrary. See, e.g., Husek v. Internal Revenue Serv., 778 F. Supp. 598, 603 (N.D.N.Y. 1991) (holding that a taxpayer may sue the United States to quiet title levied property, but must join the third-party purchaser as a

Defendants argue that that Juarez has acted in bad faith by waiting until now to join the Fencers. They cite her failure to bring claims against the Fencers in her initial complaint, her failure to raise this issue on appeal to the First Circuit and her failure to raise this issue to the Court at the status conference on April 8, 2013. D. 43 at 3. Moreover, they allege that Juarez "intentionally withheld from disclosure the planned addition of parties to spring the argument that remand to the state court is required due to lack of complete diversity." D. 43 at 3.

The Court sympathizes with Defendants' arguments. As discussed above, leave to amend "may be denied for reasons such as . . . bad faith." Foman, 371 U.S. at 182. Where plaintiffs are on notice of their claims against individuals whom the plaintiff did not initially sue, courts may consider an amendment to add such individuals as defendants as highly suspect. See Villanueva v. United States, 662 F.3d 124, 127-28 (1st Cir. 2011) (noting that "[t]his is not a case of new allegations coming to light following discovery, or of previously unearthed evidence surfacing. Rather Villanueva was well aware of the facts underlying his claim and the involvement of [newly named defendants] his former supervisors before he filed suit"). In addition, where plaintiffs join defendants solely to destroy diversity jurisdiction, some courts have found bad faith. DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir. 1987); Donner v. Sulcus Computer Corp., 103 F.R.D. 548, 549-50 (N.D. Ga. 1984).

Even so, the Court recognizes that the second amended complaint is the first pleading drafted by Juarez's counsel in this matter; both her initial complaint and first amended complaint, filed in state court before removal, were drafted *pro se*. D. 9 at 8-22, 61-80. By the time counsel for Juarez noticed his appearance, D. 20, the parties were in the midst of briefing

---

necessary party).

Defendants' motion to dismiss the first amended complaint. Thus, this is the first opportunity that Juarez has had to amend her complaint with the assistance of counsel. See Farkas v. Tex. Instr., Inc., 429 F.2d 849, 852 (1st Cir. 1970) (allowing amended complaint drafted by counsel where prior complaint was *pro se*); Echevarria, 2009 WL 349560, at *1 (discussing court's prior grant of further "leave to amend [plaintiffs'] original, pro-se complaint because Plaintiffs had since retained counsel"). Under these circumstances, the Court cannot say that Juarez has acted in bad faith. Moreover, the prejudice to the Fencers by not joining them at this stage far outweighs any suggestion of bad faith on Juarez's part in delaying her amendment. The Court therefore DENIES Defendants' motion to strike the second amended complaint, D. 43.

### C. The Court No Longer Has Subject Matter Jurisdiction Over This Matter

As the Court has determined that the Fencers, who are Massachusetts residents, may be joined as defendants, the Court finds that there is no longer complete diversity between the parties. Haber v. Massey, 904 F. Supp. 2d 136, 143 (D. Mass. 2012) (noting that "[d]iversity jurisdiction requires complete diversity between all plaintiffs and defendants) (citing Casas Off. Machs. v. Mita Copystar Am., Inc., 42 F.3d 668, 673 (1st Cir. 1994)). "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). In other words, once a court determines that joinder of non-diverse parties is proper, it must remand the action. Estes v. Sunbridge Healthcare Corp., No. 08-25-JL, 2008 WL 2458543, at *2 (D.N.H. June 13, 2008) (noting that "[t]he court cannot both allow joinder of a non-diverse party and retain jurisdiction") (citing Casas, 42 F.3d at 675 n.8). Although much time has passed in the life of this case, challenges to subject matter

jurisdiction may be raised at any time. Kontrick v. Ryan, 540 U.S. 443, 455 (2004). As the Court has determined that joinder of the Fencers is proper, the Court is without discretion to retain jurisdiction.

In supplemental briefing ordered by the Court after oral argument, Defendants argue that the fencers are "nominal" parties whose citizenship the Court must disregard in its analysis of diversity of citizenship. D. 52 at 3-4. "It has long been established by the Supreme Court that 'citizens upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy.'" Administracion de Compensacion por Accidentes de Automoviles v. INVESCO Real Estate Fund II, L.P., 847 F. Supp. 2d 323, 327 (D.P.R. 2012) (quoting Navarro Sav. Ass'n. v. Lee, 446 U.S. 458, 460 (1980) (internal citations omitted). For this reason, courts do not consider "nominal" or "formal" parties in assessing complete diversity. Navarro, 446 U.S. at 461. The First Circuit has interpreted "nominal party" to exclude parties whose interests will be affected by the outcome of the litigation. Bishay v. Am. Arbitration Ass'n, 221 Fed. App'x 3, 4 (1st Cir. 2007) (finding that opposing party in arbitration dispute was not a "nominal party" to plaintiff's action against arbitration panel seeking vacatur of award). Here, where the Court concludes that the Fencers are indispensable to the action for the reasons discussed above, the Court does not agree that they are nominal parties.

Defendants assert that because this is a claim for money damages, "the rights of the third-party purchasers are not implicated in the least." D. 52 at 5. The Court disagrees. First, Defendants have not demonstrated that Juarez seeks only money damages. In fact, in her proposed second amended complaint Juarez asks the Court to order that the property be returned to her. D. 42 ¶¶ 189-90. This has not changed since Juarez initiated the action. See D. 9 at 21

(seeking relief as to "Plaintiff's status as the rightful legal owner of the Property" in the original complaint). Nevertheless, Defendants argue that Juarez's claim must be for damages because she is without sufficient financial resources to redeem the defaulted mortgage. D. 52 at 5. However, at this stage, the Court must accept the allegations in the proposed amended pleading as true. See García-Catalán, 734 F.3d at 103 (noting that "it is manifestly improper to import trial-stage evidentiary burdens into the pleading standard"); In re Light Cigarettes Mktg. Sales Practices Litig., 751 F. Supp. 2d 183, 191 (D. Me. 2010) (noting that "[i]n general, courts cannot determine the adequacy of a legal remedy from the pleadings").

Second, even accepting Defendants' assertions at oral argument that Juarez cannot seek both money damages and equitable relief, D. 53 at 5, it is neither for the Court nor Defendants to choose its theory of recovery at this stage in the litigation. See Massachusetts v. Mylan Labs., 357 F.Supp.2d 314, 324 (D. Mass. 2005) (denying motion to dismiss unjust enrichment claim when legal remedy was available on grounds that "[Plaintiff] may have to elect only one theory of recovery eventually, and [the Court] not force Plaintiff to choose its remedy at this stage of the litigation").

Third, Juarez has also sought to add damages claims for use and occupancy against the Fencers. The Court has the same discretion under the liberal policy of Fed. R. Civ. P. 15 to allow Juarez to assert these claims against the Fencers. Manzoli v. C.I.R., 904 F.2d 101, 107 (1st Cir. 1990) (noting that "leave to amend a pleading is a matter within the discretion of the trial court"). That is, even if the Fencers were nominal parties for the purpose of Juarez's claims under Mass. Gen. L. c. 244, § 14, as the Defendants suggest, D. 52 at 4, its other proposed claims destroy complete diversity.

For all these reasons, the Court DENIES the Defendants' motion to strike the second amended complaint and REMANDS this action to Suffolk Superior Court.

## IV.  Conclusion

For the foregoing reasons, Defendants' Motion to Strike the second amended complaint, D. 43, is DENIED.   As the Court no longer has subject matter jurisdiction over this matter, this action is REMANDED to state court and the Defendants' motion to dismiss, D. 44, is DENIED AS MOOT.

**So Ordered.**

/s/ Denise J. Casper  
United States District Judge